McPHERSON ET AL. v. FOSTER BROS. ET AL.

1. **Constitutional Law**: MUNICIPAL CORPORATION: ILLEGAL INDEBTEDNESS. That a part of the indebtedness contracted by a municipal corporation for a certain purpose is within the constitutional limit will not legalize that portion of it which is in excess of the limit.

2. **Municipal Corporations**: POWERS: ACTS. The powers of municipal corporations are created only by positive enactment, and any act done in the exercise of a power not thus created is void.

3. ——: ——: ——. The attempted exercise of powers not conferred is equally illegal with the exercise of a prohibited power.

4. ——: BONDS: INNOCENT HOLDERS. In the absence of power to execute municipal bonds, no subsequent transfer of the bonds will give them effect, and they are void even in the hands of *bona fide* holders.

5. ——: ——: ——. The purchasers of the bonds of a municipal corporation are charged with knowledge that such a corporation has only express and limited powers and are bound at their peril to ascertain whether the bonds have been issued in compliance with law.

6. ——: ——: ESTOPPEL. That the tax-payers of such a corporation have stood by in silence and permitted the bonds to be issued does not estop them to object to their legality in the hands of an innocent holder.

7. ——: CONSTITUTIONAL LAW: AGENCY. The constitutional restriction upon the creating of indebtedness does not operate upon the municipal authorities, as agents of the corporation, but upon the corporation itself as principal, and therefore the latter cannot be bound by an act of its agents creating such indebtedness.

8. ——: ——: ASSENT OF THE PUBLIC. The creating of the indebtedness being *ultra vires*, the assent of all the people of the corporation thereto would not make the debt valid.

9. ——: ——: EXERCISE OF POWERS. Where the constitutional restriction affects the *manner*, and not the *fact* of the exercise of powers, acts not within the scope of the express powers of the corporation may not be *ultra vires;* but *aliter*, if the exercise of the power is prohibited.

10. ——: NEGOTIABLE PAPER: BONA FIDE HOLDER. That a municipal corporation has authority to issue negotiable paper will not authorize the presumption that bonds issued upon indebtedness in excess of the constitutional limitation were issued upon the requisite authority.

11. ——: ——: ——. The holder of such bonds takes them with notice of their infirmities.

12. ———: ESTOPPEL: SUBSEQUENT ACTS. The subsequent recognition by a municipal corporation of acts done in the exercise of a prohibited power will not estop it to afterwards deny the validity of the acts.

13. ———: BONDS: RECOVERY OF AMOUNT PAID FOR. The fact that bonds issued in excess of the constitutional limit are void and that the corporation has received value for them, does not entitle the holder to recover the amount paid therefor from the corporation.

   *Argument 1.* The holder of municipal bonds issued without authority does not occupy the position of an innocent purchaser.

   *Argument 2.* Purchasers of such bonds are presumed to know the law prohibiting their issue and to be violators of it.

   *Argument 3.* The receipt of value for them does not create a *debt.* Whether the identical money paid for them could be recovered of the municipal authorities, *quœre.*

14. ———: CONSTITUTIONAL LAW: LIMIT OF INDEBTEDNESS. Where a municipal corporation issues bonds to evidence an indebtedness in excess of the constitutional limit, such bonds are valid to the extent of the authorized issue, and invalid beyond that extent.

15. ———: ———: TAXATION. In like manner, a tax levied to pay the principal and interest of municipal bonds is valid so far as it is within the municipal power, and beyond that is invalid.

## *Appeal from Hardin District Court.*

### TUESDAY, APRIL 18.

ACTION in chancery. The petitioners allege that they are residents, tax-payers and owners of real estate in the Independent School District of Steamboat Rock, Hardin county, and prosecute this suit for all the people and tax-payers of the district as well as for themselves, the questions involved therein being of common and general interest to all the tax-payers of the district, who are so numerous that it is impracticable to bring them before the court. It is then shown that, in 1869, the officers of the school district just mentioned entered into a contract with Foster Brothers for the building by them of a school house, for which they were to receive the bonds of the district to the amount of $15,000, payable in — years with semi-annual interest at the rate of ten per centum per annum; that in pursuance of this contract the house was built, and

bonds of the character and to the amount stipulated for were issued and delivered to Foster Brothers.

It is next alleged that the bonds were issued without a vote of the people of the district as required by law, and that at the time the taxable property of the district, as shown by the last assessment, was $49,650, and an indebtedness of $450 existed upon the school corporation; that under the constitution and laws of the State, its indebtedness was limited to five per centum upon the taxable property, as shown by the last assessment, which would amount to $2,482.50, and deducting therefrom the existing debt above named, the limit to which the district could extend its indebtedness was $2,057.50.

It is also averred that, in 1871, the directors of the school district levied a tax of four per centum upon the taxable property of the district, for the purpose of paying the principal and interest of the bonds, while at the time the greatest amount of taxes that could be levied, under the law, was one and one-half per cent. The tax so levied has been placed upon the county tax books, and the treasurer is seeking to enforce the collection, and for that purpose is about to advertise the real estate of the tax-payers for sale. It is further shown that a tax of one per cent for the year 1873 has been levied by the school board to pay the interest on the bonds. Foster Brothers, the officers constituting the board of directors of the Independent School District of Steamboat Rock, the treasurer of Hardin county, and certain others alleged to be holders of the bonds, are made defendants to the action.

The relief prayed for is that the county treasurer be restrained from collecting or recovering from the tax-payers the four per centum tax, and the school board be enjoined from levying any tax whatever for the payment of the bonds ·and interest thereon, from paying, appropriating or ordering the payment of any money that is now in, or that may hereafter come into the treasury of the school district upon any of said bonds, or upon the interest due or to become due thereon, and to enjoin the treasurer of the district from the payment, out of any funds of the district, of the bonds and interest, and

that a decree be entered declaring the bonds and the interest coupons attached to each to be illegal and void.

The answer of the defendants, after admitting or denying certain allegations of the petition, which need not be here mentioned, proceeds to allege certain facts, as the extent of the territory covered by the school district, the value of the taxable property therein, the number of inhabitants and of the children within the age for attending school, the necessity existing for a school house and other matters of that kind.

It alleges, further, that an election by the voters of the district was had, and the proposition for the issue of the bonds to be used in the erection of the school house was adopted. It is also averred that the people and tax payers of the district favored the erection of the school house, and had full notice thereof, and when completed it was received and accepted by the district, and has since been used for the purposes of a school; that it is well built and worth the cost of its construction, and that a large amount of the tax levied for the payment of the bonds and interest has been collected and misappropriated by the school district. The answer shows that the bonds are all held by John Mosher, who is made a defendant, and the School Furniture Company of Sterling, Illinois. The answer is made a cross-bill and, in addition to general equitable relief, it prays that an account be had of the amount due upon the bonds, and judgment be rendered therefor against the district, and that the officers of the district be required to pay the amount settled by such judgment, etc., etc.

The cause was sent to a referee and, upon the coming in of his report, a decree was rendered which, so far as it provides relief, is in these words: "And it is further ordered that all taxes collected or levied for or on account of the said bonds so issued as aforesaid, as to pay the coupons of said bonds, must be preserved intact until disposed of by order of competent authority, in a suit where all necessary parties are before the court, provided that this decree in no way includes the three per cent tax illegally voted, and levied by the board of the independent district, May 12, 1871, which is void and subject

to be refunded whenever so ordered by the proper officer;" * * "and the court finds that many of the bonds, at least, were issued without authority of law, and the officers of the independent district are hereby enjoined from paying any of said bonds, or any of the interest coupons of said bonds, until an adjustment is made of the rights of all the parties, in conformity with the legal and equitable rights of all, or until all parties shall be brought into court, and their rights adjusted and determined."

The abstract does not show that either party appealed. It is admitted in the arguments of counsel, on both sides of the case, that plaintiffs appeal. Defendants' counsel in their argument insist that defendants appeal, but this is denied by plaintiffs' counsel.

*E. W. Eastman*, for plaintiffs.

The bonds in suit constituting a contract, if any part of them are illegal, they are all illegal. (2 Pars. on Con. 517–8–9.) The school house being built on the land of the district, it was bound to receive it as it was, and was not compromised by so doing. (*Hedges v. Buffalo*, 2 Denio, 110; *Smith v. Nelson*, 33 Iowa, 25.) A municipal corporation is an auxiliary of the government, or, more properly, a part of the government itself. (2 Kent. 274; *Clapp v. County of Cedar*, 5 Iowa, 15.) It is not subject to a suit, unless authorized by statute. (*Riddle v. Props. etc.*, 7 Mass. 187; *Mower v. Leicester*, 9 Mass. 250.) It derives all its powers from the law, and can do only what the law authorizes it, in terms or by implication. (*Stokes v. Scott Co.*, 10 Iowa, 172; *Carter v. Dubuque*, 35 Id., 416.) The officers of a municipal corporation can bind the corporation only to the extent of the authority conferred by statute. (*Taylor v. Dist. Tp. of Wayne*, 25 Iowa, 450; *Reichard v. Warren Co.*, 31 Id., 388; Cooley's Const. Lim. 215.) The holder of the bonds cannot recover from the district. (*Manning v. Dist. Tp. of Van Buren*, 28 Iowa, 336; *Brady v. Mayor of N. Y.*, 20 N. Y., 317; *Clark v. Polk Co.*, 19 Iowa, 252; *Zottman v. San Francisco*, 20 Cal., 96.) If the

board had not the power to make the contract, they had not the power by any subsequent act to make it binding upon the district. . Their acts must be done in the *manner* provided by law. (*Swift v. Williamsburg*, 24 Barb., 427; *Leavenworth v. Rankin*, 2 Kan., 357.) Those who deal with the officers of a municipal corporation are bound at their peril to know the powers of the officers. (Story on Agency, §§ 307, 319; *Mech. Bank v. N. Y. & N. H. R. R.*, 3 Kern, 631; *Andover v. Grafton*, 7 N. H., 202; *Needer v. Lirna*, 10 Wis., 280; *Dively v. Cedar Falls*, 21 Iowa, 569.) No action will lie against the district on account of these bonds. (*Brady v. Mayor*, etc., 20 N. Y., 317; *Manning v. Dist. Tp. of Van Buren*, 28 Iowa, 336.) The making of the contract and issuing the bonds was not the act of the district but of individual persons, for which they may be made personally liable. (Story on Agency, §§ 133, 307, 319, 320; Cooley's Const. Lim., 211.)

*Porter & Moir*, for defendants.

If a void contract be partially executed and completion be refused, the obligee may have his action upon an implied promise to pay for the thing transferred. (*Thomas v. Dickinson*, 14 Barb., 90.) The courts of New York have applied this doctrine to illegal or void contracts. (*Sipe v. Thompson*, 9 Barb., 315.) A party will not be allowed to rescind a contract where he has received a partial benefit therefrom. (*Hunt v. Singer*, 1 Daly, 209; *Sinclair v. Talmadge*, 35 Barb., 602.) If the vendor has executed the contract, to effect a rescission the vendee must return the property or offer to do so, and no fraud on the vendor's part will be a complete bar to an action for the price. (*Kneedle v. Steinberg*, 10 How., 67; *Stevens v. Hyde*, 32 Barb., 171; *Johnson v. Barney & Co.*, 1 Iowa 531.) Where a corporation has power under any circumstances to issue negotiable securities, the *bona fide* holder has the right to presume they were issued under circumstances which give the requisite authority. (*Lexington v. Butler*, 14 Wal., 282; *Lynde v. Winnebago Co.*, 16 Wal., 6; *Nat. Bank of Washton v. Texas*, 20 Wal., 72.) The purchaser of municipal bonds

is not obliged to look beyond the records, and if it appears that they are issued under authority of law, he is justified in purchasing. (*Clapp v. County of Cedar*, 5 Iowa, 15.) That these bonds are valid and binding upon the district, see *Stoney v. The A. L. Ins. Co.*, 11 Paige Ch., 635; *North River Bank v. Agmar*, 3 Hill, 262; *Bissell v. M. S. & N. I. R. R.*, 22 N. Y., 252; *Gelpcke v. Dubuque*, 1 Wal., 203; *White v. R. R. Co.*, 21 How., 575; *Craig v. Vicksburg*, 31 Miss., 216.) A corporation cannot stand by and by its silence permit others to assume onerous obligations and then afterwards defeat the claims its own conduct has superinduced. (*Zabriskie v. C. C. & C. R. R.*, 23 How., 381; *Griswold v. Hoover*, 25 N. Y., 595.) Bonds issued by a municipal corporation on time, negotiable in form, under legislative authority, are negotiable and subject to no equities, when the power to issue exists, in the hands of *bona fide* holders. (Dill on Mun. Corp., § 405.)

BECK, J.—I. The abstract in this case is very defective. Besides failing to show which party appeals, it does not clearly show the names of all the defendants. We treat the case as being appealed by plaintiffs, because both sides admit it in their arguments. Counsel for defendants assert in their argument that both parties appeal; this is denied by plaintiffs' counsel in his argument, who insists that his clients only appeal. We cannot regard the defendants as having appealed in this state of the case. Other matters could be mentioned that ought to appear in the abstract.

II. Certain questions are raised as to the regularity of the action of the referee in admitting evidence of the defendants, offered at the trial, when, it is claimed, the case was submitted upon written evidence in the form of depositions. We do not find it necessary to pass upon the point thus made. If the evidence be considered as proper, our conclusions would not be changed thereby. We will proceed to examine other questions which determine the rights of the parties in this suit. The one that will first receive our attention involves the validity of the bonds in question.

III. It is insisted by counsel for plaintiffs that the record

before us shows the bonds to have been issued without an election by the people, as required in Code, Sec. 1822, Acts Twelfth General Assembly, Chap. 98, Sec. 2. While the evidence upon this point is conflicting, we are justified in adopting the conclusion that the law was complied with. The record of the election is open to some objections, and there is some evidence tending to impeach its genuineness, but we are satisfied that we cannot hold it void, or so irregular as to be insufficient evidence of a compliance with the law.

Further discussion of the point or a rehearsal of the facts upon which our conclusion is based, need not be had.

IV. Code, Sec. 1821 (Acts Twelfth General Assembly, Chap. 9, Sec. 1), is in these words: "Independent school districts shall have the power and authority to borrow money for the purpose of erecting and completing school-houses, by issuing negotiable bonds of the independent district, to run any period not exceeding ten years, drawing a rate of interest not exceeding ten per cent per annum, which interest may be paid semi-annually; which said indebtedness shall be binding and obligatory on the independent district for the use of which said loan shall be made; but no district shall permit a greater outstanding indebtedness than an amount equal to five per cent of the last assessed value of the property of the district."

The constitution of this State contains the following inhibitory provision: "No county, or other political or municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount in the aggregate exceeding five per cent on the value of the taxable property within such county or corporation, to be ascertained by the last State and county tax list, previous to the incurring of such indebtedness." Art. XI, Sec. 3.

It is clearly established by the evidence in this case that the taxable property of the district, as shown by the tax list contemplated in the foregoing provisions, amounted to $49,650. Five per cent upon this sum is $2,482.50. The debt existing at the time against the district was $425. The limit of the indebtedness which, under the constitution and the statute,

could be contracted by the district was $2,057.50. We must now inquire into the effect of this violation of law, constitutional and statutory, upon the validity of the bonds.

The evidence shows that the bonds have passed out of the hands of Foster Brothers, and are now held by those who were strangers to the contract between them and the district. It is not shown that the holders of the instruments had express notice of the illegality of their inception, or of any infirmity charged against them, nor are there any facts shown which should have put the holders upon inquiry that would have led to the discovery of the infirmities of the paper. Those who now own the bonds must be regarded as innocent holders, if holders of this paper under any circumstances can be called innocent.

The question presented for our consideration is this: "Is the independent school district, a corporation existing under the laws of this State, liable to a *bona fide* holder of its bonds, issued for a sum exceeding the amount of the indebtedness which is restricted by the constitution and statutes of the State?"

The statement of the question suggests that there are two subjects of inquiry to be pursued:

1.   What is the effect of the inhibitory constitutional and statutory provisions upon the indebtedness which exceeds the prescribed limits?

2.   Do these restrictions invalidate that part of the indebtedness which is within the limits, in case the whole debt is created by the same act and for the same purpose?

V.   It has not been, and cannot be, claimed that the part of the indebtedness in excess of the constitutional limit is made valid because a part of it is not beyond that restriction. If the indebtedness would be invalid in case no part of it is within the limit, it appears plain that if a part of it be within, the part without is not cured of illegality. This thought demands no further expansion.

1. CONSTITU-
TIONAL law:
municipal
corporation:
illegal indebt-
edness.

VI.   We will now proceed to the consideration of the question involving the validity of the indebtedness which is

beyond the sum the corporation may, under the constitution and statute, lawfully bind itself to pay.

I am unable to discuss the question in language and manner more satisfactory to myself than by repeating what I have heretofore said upon the subject. In 1871 the precise question was before this court in a case then pending here. The duty of preparing an opinion, expressing the views of a majority of the court upon the question, was assigned to me, which I then discharged to the satisfaction of my brothers who agreed with me. The cause was settled or dismissed before decision, and the opinion I wrote was not filed. It was presented to the profession through one of the law journals of the day.* I now, availing myself of the labor and research I then bestowed upon the subject, reproduce it here. It is not improper further to add, that the recurrence of the question in this case has imposed upon me the duty of re-examining it, which I have tried faithfully to discharge; and the criticisms, favorable and unfavorable, which have been made upon my former discussion of the question, have stimulated my later examinations into the correctness of the conclusions I had before reached.

The opinion I am about to introduce, after a statement of the question under consideration, refers to that provision of the constitution of the State above quoted, limiting municipal and corporate indebtedness, and then proceeds in the following language, using the term "city" to describe the corporation whose acts were the subject of consideration:

This limitation, we argue, is a direct and positive prohibition, and unquestionably, we think, deprives the city of all power to issue obligations in violation thereof. A moment's consideration will make this position plain.

VII. The city, as all other municipal corporations, can exercise no power not conferred by law; upon the 2. MUNICIPAL law, from which its existence is derived, it corporations: powers: acts. depends for all authority. It is a creative and positive enactment, and all the city's powers flow therefrom. Of course we will not be understood as

* The Western Jurist, January, 1872.

intimating that the means and manner of the exercise of power must be prescribed by express enactment, but that the power itself depends thereon. *Clark v. City of Des Moines*, 19 Iowa, 200; *Reichard v. Warren County*, 31 Id., 381; *Clark, Dodge & Co. v. The City of Davenport*, 14 Id., 494; *Booth v. Town of Woodbury*, 32 Conn., 118; *Webster v. Town of Harvinton*, Id., 131; *Alley v. Inhabitants of Edgecombe*, 53 Maine, 446; *Leavenworth v. Norton*, 1 Kansas, 432; *Kyle v. Molin*, 8 Ind., 34; *Ex parte Burnett*, 30 Ala. (N. S.), 461; *Hooper v. Emery*, 14 Maine, 375.

VIII.   An act of a municipal corporation, done in an attempt to exercise power not possessed by it, is void. This is a corollary of the doctrine just announced. If it were not so, power could be exercised which is not possessed, and the corporation would possess authority independent of the legislature—a proposition contrary to the doctrine above stated, which is well supported by principle and the cases.

IX.   There is no distinction in reason between the cases of entire absence of enactment conferring power, and a prohibition of its exercise beyond a certain limit. They are in fact one and the same case. In the first instance power is not granted, and is not, therefore, possessed; in the other it is expressly withheld, and its exercise prohibited, and is, therefore, not conferred. There is in each case a total absence of authority. The same is true where power is granted upon conditions. They must be complied with before the power passes to the corporation. It is equally plain that if power be conferred to be exercised to a certain extent and no farther, when the limit is reached, the power ceases. These principles are evident, and do not require the support of authority. No other rules would keep corporations in subordination to the State, or be in harmony with the fundamental doctrine above announced, namely: all power of corporations is derived from positive enactment.

In the case before us, the city is authorized to create an indebtedness to a certain extent, and is expressly prohibited from exceeding such limit. Its officers may issue its bonds

McPherson v. Foster Bros.

upon the condition that the whole indebtedness, including that to be created by the obligations in question, shall not exceed five per cent upon the taxable property within the city. This is an express limitation upon, and a condition annexed to, the exercise of power. The case is within the rules above stated.

These doctrines are well sustained by authority, and are not now for the first time recognized and applied by courts. The case of *Reichard v. Warren County, supra,* is not unlike in principle the one before us. In that case the limit, as provided by statute, upon the power of the county to expend money in building a court-house was a vote of the people. A contract was made for the expenditure of a larger sum than was voted, under which the plaintiff claimed recovery. It was held that the contract had no binding force, for the reason that it exceeded the limitation imposed by the vote of the people upon the power of the county. There are numerous cases in the reports where acts of counties and municipal and other corporations have been held void, because they exceeded the power conferred upon those bodies. We are not aware that a contrary doctrine has been anywhere recognized. It is admitted by everyone that, "If the bonds were issued without any authority to issue bonds, they would be clearly void." But some insist, "If the power to issue exists, and is irregularly exercised, or is exercised in disregard of conditions and limitations, the *bona fide* holder is protected." We have established above that a condition or limitation upon a power whereby it ceases at a certain point, as effectually defeats its exercise beyond the limit, as though no power had been granted at all. The statement of the rule, as admitted, is utterly inconsistent with the exception insisted upon. When the limitation is passed, there is the same absence of power as though none had ever been conferred; otherwise the condition in limitation would be without effect.

X. It is insisted that if the bonds are issued and negotiated without objection by anyone, they are, in the hands of *bona fide* holders, without notice of their infirmities, binding upon the city. This position is based upon the argument just noticed and the supposed injus-

4. ———:
bonds: inno-
cent holders.

tice of a contrary doctrine. It is argued that if, by the silence of the inhabitants of the city, the bonds are permitted to be issued and put upon the market, it will operate to the injury of the innocent purchasers, and the inhabitants ought to be concluded; and in this view it is insisted, while admitting that, if the bonds were issued without authority they are void, that the city is bound by them as the limitations and conditions which circumscribed their power have only been overstepped. Several cases are sometimes cited to support this position. Some of them, in our opinion, fail to do so. It appears in those cases that the power was conferred upon the corporation by proper legislation, but was irregularly exercised—the manner or means of its exercise were not in accord with law. They are not cases of limitation of power or of absence thereof. Other cases sometimes cited seem to support that position. They are based, however, upon the equitable ground of protection to *bona fide*, innocent holders of commercial or marketable paper.

These cases are not numerous and are overcome, in our opinion, both by authority and reason supporting the contrary doctrine. The court in many cases has uniformly held that, in the absence of power to execute municipal or county bonds, no subsequent transfer thereof will give them effect, but they will be held void in the hands of *bona fide* holders. *Hull & Argalls v. The County of Marshall*, 12 Iowa, 142; *Clark v. The City of Des Moines, supra; Smith v. Henry County*, 15 Iowa, 385; *Chamberlin v. The City of Burlington*, 19 Id., 404.

XI. The holders of the instrument in question cannot claim to be innocent purchasers without notice. They are purchasers of the obligations of a municipal corporation and were bound to know that the city possessed only express and limited powers. It had not, as the purchaser was bound to know, general power to enter into contracts, and borrow money. The purchaser was required, for that reason, to look into the power of the city and examine the acts of its officers by whom the bonds were issued, in order to ascertain whether the law authorized the instruments and con-

ferred authority upon the corporation and its officers to issue them. The like rule is applicable to instruments of all kinds issued by those exercising special and limited powers. It is the settled doctrine of this court. *Hull & Argalls v. The County of Marshall, supra; Clark v. The City of Des Moines, supra; Reichard v. Warren County, supra.*

The same rule is announced and fully recognized by the United States Supreme Court in the recent case of *Marsh v. The Supervisors of Fulton County*, 10 Wallace, 676, s. c. 5th West. Jur., 166. It is there held that a holder of a county bond " was bound to look to the action of the officers of the county, and ascertain whether the law had been so far followed by them as to justify the issue of the bonds. The authority to contract must exist before any protection as an innocent purchaser can be claimed by the holder." It is claimed that a different doctrine is recognized in the prior cases decided by the United States Supreme Court, involving municipal and county bonds. It will be found, however, upon an attentive examination, that the decisions referred to do not go to that extent. In *Aspinwall v. Knox County*, 21 How, 539, and probably in some other cases, it is held that the purchaser is required to look no further than the instrument to ascertain whether the law authorizing it has been complied with. It is not held that the bond itself is evidence of power in the corporation to issue it. But should there be, to some extent, a conflict between the recent case of *Marsh v. The Supervisors of Fulton County*, and prior adjudications in the same court, the last decision, which was concurred in by the whole bench, appears to be well supported by reason, and the principles of the law. It is in accord, too, with *Aspinwall v. The County of Daviess*, 22 How., 365, in which it is held that county bonds, issued in violation of the constitution of the State, are void, even though held by *bona fide* purchasers, without notice of their infirmity.

In our opinion the fact that the bonds in question are held by innocent purchasers does not render them valid against the city.

XII. A position is sometimes assumed which demands

further consideration.  It is this:  The inhabitants of the city, having stood by in silence and permitted the bonds to be issued, cannot now be heard to object to them, when they are in the hands of an innocent party.

6. ——: ——:
estoppel.

This argument is answered by the view we have just presented, as to the holder's duty.  It rests upon him to ascertain the authority of the city to issue the bonds.  He, therefore, cannot claim the protection accorded to the holder, in good faith and without notice, of all instruments denominated negotiable or commercial paper.

But suppose they are estopped to dispute the validity of the city bonds; all the tax-payers of the city are affected in the same manner, and to the same extent.  No tax-payer, therefore, can resist the bonds, and the corporation and its officers are equally estopped to object to them.  There is, therefore, no one who can contest their validity.  It follows that the bonds, though illegal and void, having been issued without authority, can be enforced against the city, and thus the plain and direct provision of the constitution of the State is defeated and disregarded.  The argument proves too much, and is thus completely answered.

XIII.  An argument in support of the position, that such bonds are valid in the hands of *bona fide* holders, is based upon the doctrines governing principals and agents, which, it is insisted, are applicable to the case we are discussing.  The municipal authorities, it is claimed, are the agents, the city is the principal, and its charter or the law in question, the power of attorney.  It is said that the law gives the city authorities power to create an indebtedness to a certain extent.  They may create a debt but are limited in the exercise of the power as to its extent.  Now, applying the rules fixing the liability of a principal, it is claimed that, as the city authorities have the power to create a debt, the city will be liable upon the indebtedness, when held by innocent parties, even though the limit upon the exercise of the power be passed in its creation.  The fallacy of this argument is at its very foundation.  The restriction in the law in question is not upon the power of the city officers, the agents as

7. ——: constitutional law: agency.

they are considered; it is upon the city itself, which in the argument is made to represent the principal. By the constitution the city is forbidden to contract the indebtedness. Power is not only withheld but a prohibition is placed upon its exercise. Applying the theory of principal and agent as suggested, we have the case of an act done by an agent, which the principal had no power to do, regarded as valid, because it was done by an agent, a result that cannot be admitted.

It is readily seen that the rules relating to principals and agents have no application to the question we are considering, and do not even serve to illustrate the principles involved. The city authorities execute the power granted to the city, not as agents, but in the discharge of the functions of the municipal government. The municipal power is exercised through the city officers. They are instruments for the exercise of the power conferred by the city charter. They constitute the government of the city. They derive their authority from the charter, not from an ideal being called the city. The constitutional prohibition acts directly upon them.

In weighing this argument the nature and effect of the constitutional inhibition upon the city to issue the bonds must

8. ——: ——: not be overlooked. It is a prohibition upon the
<small>assent of the public.</small> exercise of the power, by forbidding the legislature to confer authority upon municipalities to create indebtedness beyond a certain limit. The creation of such an indebtedness is not only unauthorized but illegal and contrary to the settled policy of the State, as declared in the constitution. Will the assent of the people of the city, in their corporate capacity, make the bonds valid? Certainly not. That assent was given by the act of the municipal government in issuing the bonds. It must be admitted that the mere issuing of the bonds does not make them valid. Now suppose every tax-payer, or every resident of the city, had in the most formal and solemn manner declared his assent to the issuing of the bonds, or after they were issued, to their validity, would such action authorize any court to declare the bonds valid? If so, we must admit that the people of the city may, by their voice, annul the constitution of the State, or the limitations of

the charter. But this will not be pretended for this obvious reason; the constitution prescribes rules of law in regard to the government and policy of the State that are supreme. Whatever is in conflict therewith, the courts must regard as illegal and not of binding force, even though the people of the localities particularly affected thereby should, in a formal manner, assent thereto. Constitutional prohibitions cannot be removed by such assent.

The constitution provides that the General Assembly shall make no law respecting the establishment of religion, or providing religious tests, as qualifications for officers of public trust. Now suppose that the General Assembly should, by law, permit the municipalities of the State to establish religion within their respective limits, or provide religious tests? Would it be claimed that the courts must sustain the acts of a corporation in the exercise of the power thus granted to it, on the ground that all of the people of the city assented thereto? No one will maintain such a doctrine. The people of a city cannot make for themselves such laws. Being in conflict with the constitution, which, until it be changed or abrogated in the manner therein prescribed, is paramount to the will of the people, we would declare laws of this character void, even though every being in the State affected thereby should assent to them. For the very same reason the courts must declare void the act of a city in issuing the bonds in question, even though it were done with the consent of all the citizens and tax-payers. Being against the policy of the State as declared in the constitution, it cannot be made valid.

The argument under consideration is based upon the position that the inhabitants of a city by their silence are estopped to deny the validity of the bonds; that having failed to object to them at a proper time, their assent will be presumed. It will be conceded that such implied assent can have no greater effect to make the instrument valid, than consent expressly given, which we have seen will not so operate.

In support of opposite views, cases are sometimes cited where acts of corporations not within the scope of their express power are held not to be *ultra vires*. These are cases

where the power exercised is authorized for a particular object, 9.——: —: or the acts in question are required to be done in a particular manner, but the object and manner of the exercise of power are different from and in conflict with the charter of the corporations. It is held that such acts are not *ultra vires*. In these cases it will be remarked that the acts in question are authorized; the restrictions therein relate to their object or manner. The cases are therefore quite different from the one under consideration, in which the restriction is imposed upon the very exercise of the power, without regard to the purpose or manner of its exercise. Suppose the charter of a city should authorize money to be borrowed to build a railroad. The money is borrowed but is expended in paving a street. The power to borrow money being conferred, the use of the money after it is borrowed could not affect the validity of the act of borrowing done in pursuance of the power.

*(margin note: exercise of powers.)*

In the case of *Miners Ditch Co. v. Zollenbach*, 37 Cal., 453, sometimes cited and relied upon as an authority in point against our view, a private corporation, for the purpose of consolidating its business and property with another corporation, conveyed all its lands. It was held that, as it had the power to convey its property for some objects, the purpose for which the conveyance was made, though admitted to be without the general scope of its power, did not invalidate the act. The case recognizes no principle in conflict with the views we have above announced, but on the contrary contains reasoning in their support. The following extract from the opinion of the court in that case, announced by CHIEF JUSTICE SAWYER, very happily expresses the distinction we have just attempted to point out: "The term *ultra vires*, whether with strict propriety or not, is also used in different senses. An act is said to be *ultra vires* when it is not within the scope of the powers of the corporation to perform it under any circumstances, or for any purpose. An act is also, sometimes, said to be *ultra vires* with reference to the rights of certain parties, when the corporation is not authorized to perform it without their consent; or with reference to some specific purpose, when it is

not authorized to perform it for that purpose, although fully within the scope of the general powers of the corporation, with the consent of the parties interested, or for some other purpose. And the rights of persons dealing with corporations may vary, according as the act is *ultra vires* in the one or other of these senses. All these distinctions must be constantly borne in mind in considering a question arising out of dealings with a corporation. When an act is *vltra vires* in the first sense mentioned, it is generally, if not always, void *in toto*, and the corporation may avail itself of the plea. But when it is *ultra vires* in the second sense, the right of the corporation to avail itself of the plea will depend upon the circumstances of the case."

In our opinion, the bonds and coupons, issued in excess of the limit prescribed, are void, and of no binding force against the city.

XIV. A few thoughts upon this branch of the case, in addition to the foregoing argument, I will briefly present. They are principally in reply to objections urged by counsel in this case.

It is insisted that, "when a corporation has power under any circumstances to issue negotiable securities, the *bona fide* holder has a right to presume they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such holder, than any other commercial paper." This in the language of the United States Supreme Court in *City of Lexington v. Butler*, 14 Wal., 282. The doctrine is recognized in other cases in the same court. But it has no application to the case under consideration. It applies to the manner of the execution of authority possessed, the proceedings preliminary to the exercise of the power, which it may be, are expressed as conditions upon which it may be exercised, as the submission of a question to the vote of the people, or the like. The very language of the quotation expresses this thought; " the *bona fide* holder has a right to presume they (the bonds), were issued under *circumstances that gave the requisite authority*." This

10. ——— : negotiable paper: bona fide holder.

language pre-supposes that some *circumstance*, or a vote, confers the authority. If that be so it will be presumed. But in the case before us no circumstances, no fact, no act done, short of an amendment of the constitution, could give the authority. In plain words, the authority could be conferred in no manner. It cannot be presumed, for the law will not presume an impossibility; neither will the courts ever exercise a presumption that will annul and set aside a law, much less the constitution. The point demands no farther attention.

XV. That every holder of paper of this character, issued without authority, takes it with notice of its infirmities, is a doctrine that seems to be sustained upon the most familiar legal principles. The whole world must take notice of the constitution and laws of a State. This is a rule upon which all intelligent men act. No one would think he could be excused for ignorance of the laws of a State, affecting title to lands therein purchased by him. Upon no principle can the dealer in commercial paper be excused for ignorance of constitutional provisions, affecting the power of a corporation to execute such paper. He must take it at his peril. This doctrine is recognized in *The Mayor v. Ray*, 19 Wal., 468, by four Justices, Bradley, Miller, Davis and Field, and supported by the most cogent arguments.

XVI. It is said that since the district " had the general power to contract an indebtedness, although the amount was limited by the constitution, and the fact of such limit being reached was a matter *in pais*, and the bonds have come to the hands of *bona fide* holders, the obligation of the city to pay is complete, although the bonds were issued in excess of such limit."* .The thought expressed by this quotation is this: Since the fact that the constitutional limit of indebtedness has been passed is a matter *in pais*, purchasers of the bonds will not be chargeable with notice. It strikes the mind with but little force. A matter *in pais*, is a matter not of record in a court. Of some things that are *in pais* the court will not take judicial notice. But it has never been claimed that purchasers of property, securities, and the like, are not charge-

---

* Western Jurist, January 1872, page 16.

able with notice of matters which are not of record, are *in pais*. The rules in regard to matters *in pais*, and the term itself, have no application to questions effecting the validity of negotiable paper.

The purchaser of the paper in question is, as we have seen, chargeable with notice of the statute and constitution of the State; the facts upon which the determination of the limit of indebtedness is to be made, and whether it has been reached, are all open to the world. The tax list is a county record; indebtedness of the school district is shown by its record. There can be no excuse for ignorance, on the part of the purchaser of the bonds, of the facts presented and set out in these records.

XVII. It is next insisted that the district and the taxpayers are estopped to deny the validity of the bonds, by their knowledge and long acquiescence in the act of the officers issuing them, and by the levy of taxes for the payment of interest, and the payment of interest upon some of the bonds. In support of this position certain decisions of the United States Supreme Court are cited. The doctrine recognized by that court is best expressed by quoting its own language: "Without legislative authority a municipal corporation, like a county, may not subscribe to the capital stock of a railroad company, and bind itself to pay its subscription, or issue its bonds in payment, and if it does, the purchaser of such bonds is affected by the want of authority to make them. But it does not follow from this that where the legislature has given its sanction to the issue of bonds, provided that before their issue certain things shall be done by the officers, or the people of the county, the bonds can *always* be avoided in the hands of an innocent purchaser by proof that the county officers, or the people, have not done, or have insufficiently done the things which the legislature required to be done before the authority to subscribe, or to issue the bonds, should be executed. A purchaser is not always bound to look farther than to discover that the power has been conferred, even though it be coupled with conditions precedent. If the right to subscribe be made dependent upon

the result of a popular vote, the officers of the county must first determine whether the vote has been taken as directed by the law and what the vote was. When, therefore, they make a subscription and issue county bonds in payment, it may fairly be presumed, in favor of an innocent purchaser of the bonds, that the condition which the law attached to the exercise of the power has been fulfilled. To issue the bonds without the fulfillment of the precedent conditions would be a misdemeanor, and it is to be presumed that public officers act rightly. We do not say this is a conclusion presumptive in all cases, but it has more than once been decided that a county may be estopped against asserting that the conditions attached to a grant of power were not fulfilled." *Pendleton County v. Amy*, 13 Wal., 297, 304.

The presumption which is the foundation of the estoppel recognized by the court, it is clearly stated in the foregoing quotation, will be exercised only in cases when there is a grant of power. If the power be withheld, if there be no legislative grant of authority for the exercise of the power, no estoppel will arise from the acts of the officers, or the people of the corporation.

The same court has more recently held that, in the absence of authority in a corporation to contract a debt, which was attempted under an unconstitutional legislative enactment, the payment of interest by the corporation worked no estoppel against setting up the unconstitutionality of the legislation, and the invalidity of the bonds issued thereunder. *Loan Association v. Topcka*, 20 Wal., 655.

XVIII. It is said: "If the bonds are void, and the city has received value, it would be liable to pay back what it had received from innocent persons, or else the provision of the constitution would operate to ensnare and defraud those who deal with it; and, if thus liable, the constitutional limit may be exceeded in this way as well as by sustaining the right to recover on the bonds. Dillon on Municipal Corporations, § 88, note 2. This view presents the suggestion of an ingenious plan for setting at naught the provision of the constitution of the State under

*bonds: recovery of amount paid for.*

consideration. It is commended on the ground that, if the constitution be enforced so as to cure the evil, from which it is intended to protect the people of the State, it "would operate to *ensnare and defraud* those who deal with" political corporations. In such a case, according to the sentiment of the above quotation, the constitution becomes an instrument of fraud, and on that ground may be violated. It must be confessed that it is a novel thought, to disregard the supreme law of the State because it operates to ensnare and defraud innocent persons. The error of the quotation is based upon a partial view of the rights of those who are called innocent purchasers, and want of attention to the object and purpose of the constitutional restriction in question.

Prior to the adoption of our present constitution, many of the counties and cities of the State had become indebted to an extent that was not only burdensome, but threatened permanently to retard their growth and prosperity. Indebtedness of this character was uniformly contracted upon the affirmative vote of the electors. It was believed sound policy demanded that a restriction be placed upon the power of counties and other political corporations to incur voluntary indebtedness. The constitutional restriction under consideration was the result of the sentiment then prevailing, which had its origin in the experience of the day.

It will be observed that this restriction operates upon the political sub-divisions of the State and upon the people. It is intended to prohibit the creation of indebtedness beyond the prescribed limit. All acts in contravention thereof are void. As we have shown, the provision is known to the world, and no one can be presumed to be ignorant of the invalidity of bonds issued in violation thereof. There can be no innocent purchasers of such paper issued without authority. It has been held that, where municipal bonds are issued without authority, a holder cannot recover on the ground that he is an innocent purchaser. *Pendleton Co. v. Amy,* 13 Wal., 297 (304); *Aspinwall v. Commissioners of the County of Daviess,* 22 How., 364 (379); *Marsh v. Fulton Co.,* 10 Wal., 676;

*Clark v. City of Des Moines*, 19 Iowa, 199; *Marshall Co. v. Cook*, 38 Ill., 46.

Many other decisions could be cited in support of this doctrine. See cases referred to in Cooley's Constitutional Limitations, Chap. 8, p. 215–16; Dillon's Municipal Corporations, Secs. 108, 426.

Purchasers of these bonds, being presumed to take them with notice of the constitutional restriction that is violated by their issue, must be regarded by the law, with the people who vote for issuing the bonds and the corporations that do issue them, as violators of the constitution in attempts to create an indebtedness forbidden by it. Surely if, in the enforcement of the constitution, those who attempt its violation are made to suffer thereby, it ought not to be said that the supreme law of the State becomes an instrument " to ensnare and defraud " them.

The constitutional provision in question, it will be observed, prohibits the creation of indebtedness beyond the prescribed limit. It is an inhibition upon such indebtedness, however its creation may be attempted. It will cover the case of implied contract, as well as express contract by bond, or otherwise. It is aimed at the *indebtedness, not its* form. It cannot be true, then, that a *debt* could be created, because a consideration is received. It cannot, therefore, be admitted that "if the bonds are void, and the city has received value, it would be liable to pay back what it has received," for this implies that, by receiving the "*value*" a debt is created. It may be that the identical money or other thing of value paid in such cases could be recovered from the hands of the officers or agents of the political corporation while it could be reached there, on the ground that property therein had not vested in the corporation. But upon this point we express no opinion. What we do intend to say is, that such a transaction cannot create a debt, and no recovery as for a debt can be had thereon. *Manning v. Dist. Tp. of Van Buren*, 28 Iowa, 332; Cooley's Const. Lim., p. 196; *Zottman v. City of San Francisco*, 20 Cal., 96.

XIX. The independent district could become indebted to

the extent of five per cent upon the amount of the last tax list. Deducting the existing indebtedness from such sum, we find the amount of the debt it could contract was $2,057.50. But it has attempted to contract a debt of $15,000. We have seen that for the excess over the prescribed limit no right of action exists against the district. The question now arises, is the district liable for the amount of the indebtedness within the restricted limit. We think it is. As we have seen, the constitutional inhibition operates upon the indebtedness, not upon the form of the debt. The district may become indebted to the amount of $2,057.50 by bond. If the debt exceeds that amount, it is void as to the excess, because of the inhibition upon the power of the district to exceed the limit, and the bonds as to the same excess are void because of the non-existence of a valid debt therefor. But this restriction does not extend to the sum of $2,057.50 for which the district had power to issue its bonds. That sum is a valid debt. The bonds to that extent are valid. It is no unusual thing for instruments of this character to be partly valid and partly invalid. ° So far as they secure a lawful debt they are valid. So far as the debt is unlawful, they are invalid. The case is analogous to the act of an agent which is partly within his authority and partly without. The act, so far as authorized, would bind the principal, while, to the extent it was unauthorized, it would not be binding. Of such acts it is said, " When there is a complete execution of authority, and something *ex abundanti* is added, which is improper, there the execution is good, and the excess only is void." Story on Agency, Sec. 166.

It appears that the bonds all bear the same date and were issued, though at different times, as a part of one transaction. They were intended as security for a debt of $15,000 which was attempted to be contracted in building the school-house. It cannot be said that, in justice, invalidity should attach to certain particular bonds, while others, to the amount for which the district could lawfully contract indebtedness, should be held valid. Each bond being but a part of the whole debt,

must partake alike of invalidity and validity—it must be partly valid and partly invalid. The whole alleged debt is $15,000; of this sum $2,057.50 is valid. Each bond will be valid to the extent it represents a portion of the debt lawfully contracted. Such a sum is the proportion of the amount of the bond as $2,057.50 bears to $15,000; that is $\frac{2,057.5}{15,000.0}$ of the principal of each bond is valid and collectible. The interest on each bond is determined by the same rule, or calculated upon the amount of each bond held to be valid.

XX. A tax of four per cent was levied for the year 1871, for the purpose of the payment of the principal and interest of the bonds. The law limits the amount of taxes to be levied for such purpose to one per cent. *Code,* Sec. 1807. The levy to the extent of three per cent is in excess of the authority of the district and must be held void. But for the same reason that we hold the bonds valid to the extent of the amount the district could lawfully become indebted, the levy to the extent of one per cent may be supported in this action. It will be readily seen that different questions would arise in case of an excessive levy enforced by sale of property. We are not to be understood as intimating an opinion that in such a case the levy would be good to the extent of the amount authorized. No such a question arises here. In this case the levy is assailed before it is enforced in the way referred to, and it may now be corrected to harmonize with the law conferring authority upon the district. Of the tax levied one per cent may be collected.

XXI. It appears that a part of the tax has been paid. Whatever sums have been paid in excess of the lawful tax of one per cent, which remains in the hands of the county treasurer, or the treasurer of the district, will be refunded to the tax-payers, each one receiving the excess paid by him.

XXII. No relief in the nature of a judgment in favor of the bond-holders for the amount lawfully due on the bonds will be granted, as they claim nothing of the kind. An answer in the nature of a cross-bill claiming such relief was filed, but it is insisted by defendants' counsel that it was withdrawn. Whether that be so or not, they are now understood

not to claim such relief; we need not inquire whether it may be granted.

A decree in harmony with this opinion will be entered in this court.

MODIFIED AND AFFIRMED.