## McKinney v. Board of Trustees of the Cadiz Graded Common School District.

(Decided June 6, 1911.)

Appeal from Trigg Circuit Court.

1.  Schools—Election to Vote Tax for Benefit of, or to Establish—
    Where a proposition to impose a tax for the benefit of a graded

school or to establish a graded school is submitted to the voters and defeated, the trustees or the people may in the same year again submit the question. The constitutional provision that only one election shall be held in the same year does not apply to schools.

2. Notice of Election to Vote Tax—It is not necessary that notices that an election will be held to create an indebtedness shall specify that a tax will be levied to create a sinking fund and pay the interest on the debt. A notice that conforms to the statute will be sufficient.

3. Notice—Statement of Extent of Indebtedness to be Incurred— It is not necessary that the notice or order calling the election should specify the extent of the indebtedness to be incurred. The indebtedness can not exceed the amount authorized by the constitution. But if the amount should be stated and should exceed the amount authorized by the constitution, it would not affect the validity of the election as the trustees could not issue bonds for an amount exceeding the constitutional limit.

4. Indebtedness in Excess of Constitutional Limit Void—If the trustees should create an indebtedness exceeding the constitutional limit, only the excess would be void.

SMITH & RYAN for appellant.

McQUOWN & BECKHAM and KELLY & KING for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In October, 1910, an election was held in the Cadiz Graded School District to ascertain the wishes of the voters as to whether or not the trustees of the district should issue bonds not exceeding $12,000 for the purpose of repairing or erecting a school building. The tax was voted by more than the requisite majority, and its validity is assailed by appellant, a taxpayer of the district, upon the following grounds: First: That as an election was held in August, 1910, for the same purpose and the tax defeated, another election could not be held in October, 1910, submitting to the voters substantially the question that was submitted to them in August. 1910. In other words, the contention is that where the tax is defeated, a second election can not be held in the same year. Second: That the notices posted in the district that an election would be held were fatally defective in not stating that a tax would be levied upon the property of the district to pay off the bonds issued if the election was favorable to the school. Third. That the order submitting the election authorized the trustees

to issue bonds to the extent of $12,000, when the assessed value of the property in the district did not authorize the creation of a debt exceeding $11,000.

From the agreed state of facts, it appears (1) that the assessed value of the property owned by white persons at the assessment in 1908 was $595,160, and that there was no existing indebtedness against the district. (2) That the advertisement of the election published in the county paper within the district set out the intention of the trustees to levy a tax upon the property of the white people to pay the indebtedness if it was created, but the notices of the election posted as required by law omitted to state that a tax would be levied. (3) That the call for the election authorized the trustees to issue bonds not exceeding $12,000. (4) That the trustees did not intend to issue bonds or create an indebtedness in excess of $11,000.

The lower court held the election valid, but also ordered that the trustees should not issue bonds or create an indebtedness exceeding $11,000.

Section 148 of the Constitution provides in part that:

"Not more than one election each year shall be held in this State or in any city, town, district or county thereof, except as otherwise provided in this Constitution."

But section 155 exempts school elections from the operation of the constitutional provisions in reference to elections, providing that:

"The provisions of sections 145 and 154, inclusive, shall not apply to the election of school trustees and other common school district elections. Said elections shall be regulated by the General Assembly, except as otherwise provided in this Constitution."

The statute does not prohibit the holding of more than one election like the one involved in this case in the same year, and in the absence of any statutory limitation upon the authority of the trustees to submit the question of creating an indebtedness more than once in the same year we think that when a tax has been defeated the trustees may again and as often as they think proper submit the same or a different question to the voters. As the manner in which elections like this shall be held was left to the legislative department, and

it has not seen proper to limit the number, we must assume that it was intended to leave this matter to the discretion of the trustees of established districts and to the people of territory seeking to establish a new district.

In reference to the failure of the notices to specify that a tax would be levied. this may be said: Section 4481 of the Kentucky Statutes provides in part that the trustees—

"Are hereby authorized and empowered to order an election and submit to the voters of their respective graded common school districts the question whether or not the trustees thereof shall issue bonds of their respective graded common school districts, in any amount not exceeding the limit provided by' sections 157 and 158 of the Constitution of this State, for the purpose of providing suitable grounds, school buildings, furniture and apparatus for their respective graded common school districts. Provided, That due notice of said election shall be given by the trustees of their respective districts, by written or printed posters, not less than one foot square, signed by the trustees of their respective districts, stating the time, place and hours of said election, posted at not less than six public conspicuous places in the district for ten days previous to the day of the election, and by one insertion in the newspaper, if any, published in said district. * * * And one of the judges shall ask of each voter 'Are you in favor of the issue of bonds by the trustees of the graded common school in this district for the purpose of providing suitable grounds, school buildings, furniture and apparatus for this district.' * * * If two-thirds of the voters voting at said election vote in favor of the issue of the bonds, then the trustees of said graded common school district may issue the bonds of said district for an amount not exceeding the constitutional limit * * * and for the purpose of meeting the interest on such bonds and creating a sinking fund for the payment of the principal thereof, the boards of trustees of their respective districts, whereby the issue of such bonds is voted, are authorized and empowered to levy annually a tax in addition to that already voted."

It will be observed that this statute prescribed what the notices shall contain, and does not provide that they shall state that a tax will be levied to create a sinking fund and pay the interest on the bonds. A notice that conforms to the statute is sufficient. It is not necessary that the notices should specify that a tax will be levied if the indebtedness is created. The imposition of the tax necessarily follows the creation of the debt, and the statute expressly provides that when the indebtedness is created the trustees shall levy the tax.

The objection that the notices failed to specify the amount of indebtedness to be incurred is not well taken. The statute does not provide that the order calling the election or the notices shall specify the extent of the indebtedness. The only requirement is that the indebtedness shall not exceed the amount authorized by the Constitution. Although it is usual in elections like this to mention in the order calling the election as well as in the notices the amount of indebtedness proposed to be created, the failure so to do will not invalidate the election. If the amount of indebtedness proposed to be created as stated in the order calling the election or in the notices should exceed the amount authorized by the Constitution to be imposed, it would not affect the validity of the election, as the trustees could not in any event create an indebtedness exceeding the constitutional limit. But if the trustees should create an indebtedness exceeding the constitutional limit, only the excess would be void.

Wherefore, the judgment upholding the creation of an indebtedness of $11,000 is affirmed.