KIRBY *v.* CITY OF MONROE.

MUNICIPAL CORPORATIONS—BONDS—MONROE CHARTER—EFFECT OF
VOTE AUTHORIZING BONDS IN EXCESS OF LIMIT—INJUNCTION.
Since the limitation of bonded indebtedness fixed in the
charter of the city of Monroe applies to the issuance of
the bonds and not to the vote authorizing same, injunction
will not issue to restrain the city commission from issuing
bonds within the legal limits, although the electors by
vote authorized an issue in excess thereof.

Appeal from Monroe; Root (Jesse H.), J.  Sub-
mitted May 3, 1921.   (Docket No. 115.)   Decided
June 6, 1921.

Bill by Charles E. Kirby and another against the
city of Monroe and others to enjoin the issuance of
certain bonds.   From a decree dismissing the bill,
plaintiffs appeal.   Affirmed.

*Ira G. Humphrey, Washington I. Robinson,* and
*Lizzie J. McSweeney,* for plaintiffs.

*J. C. Lehr* and *Miller, Canfield, Paddock & Perry*
(*John C. Spaulding,* of counsel), for defendants.

BIRD, J.   Plaintiffs are residents and taxpayers of
the city of Monroe.   They filed their bill in equity to
restrain the city from purchasing the Monroe water
works, on the theory that to do so would violate the
statutory and charter provisions against incurring in-
debtedness beyond the legal percentage of the assessed
valuation of the property of the city.   The case was
heard upon stipulation as to the facts involved, there
being no disagreement as to them.   The chancellor

refused the relief prayed and the plaintiffs have appealed.

It appears from the stipulation that in pursuance of a special election called for and held on August 31, 1920, the electors of the city of Monroe voted to purchase the Monroe water plant for $125,000, subject to an existing bond issue thereon of $175,000, which the city is to assume and pay at maturity. In order to provide means for making this purchase and increasing the efficiency of the plant they voted to raise, by loan, $550,000. It further appears that the assessed valuation of the city for the year 1920 was $12,551,954, and that its indebtedness at that time was the sum, of $224,507.09.

Acting under the authority voted the city commission has provided, by resolution, to borrow $200,000 of the amount authorized. It is provided this sum is to cover the cash payment of $125,000 for the water works, and $75,000 to be used in making extensions, additions and improvements thereto.

Sections 133 and 297 of the city charter appear to be material. They are:

"The commission is hereby prohibited, except as herein otherwise provided, from borrowing any money or authorizing the creation of any liability or indebtedness against the city in any one year, exceeding in the aggregate the amount of five per cent. of the assessed valuation of the property in said city, nor shall it be lawful for said city to ever create an indebtedness existing from time to time to exceed eight per cent. of the assessed valuation of the property of the preceding year." * * * Section 133.

"The city commission may borrow money on the credit of the city and issue bonds therefor in a sum not to exceed eight per centum of the assessed value of the real and personal property in the city for the purpose of purchasing parks and public grounds and the construction and the erection of all public buildings, libraries, hospitals, almshouses, electric light,

gas, heat, water and power plants and other public utilities (except transportation facilities), bridges, sewers and any other public work authorized by this charter whenever approved by the electors voting thereon at any general or special election, provided, that at no time shall the bonded indebtedness of the city exceed eight per centum of the assessed valuation of all real and personal property in the city."    *    *    * Section 297.

It is argued by plaintiffs that the $550,000 which the electors authorized to be borrowed, plus the $175,000 of water works bonds, payment of which is assumed by the city, makes a total of $725,000 indebtedness, and that this sum is in excess of 5 per cent. of the assessment roll for the year 1920 and, therefore, in violation of charter provision 133. It is also argued that the $725,000 plus the present indebtedness of the city of $224,507.09 is in excess of the 8 per cent. and, therefore, in violation of section 297 of the charter. Plaintiffs conclude that by reason of these sums being in excess of the percentages allowed by the charter they cannot be raised by loan, and further that *no part of the amount authorized can be raised.*

Defendants do not accept all of plaintiffs' conclusions as to the figures, but they say that even if the electors authorized more money to be raised than could be legally borrowed in any one year the commission has a right to issue obligations for such part of it as is legal under the law. That there has been no attempt upon the part of the commission to incur the full amount of the indebtedness authorized, but only the $200,000, and that they have, under the law, a clear right to raise this amount because the same is within the 5 per cent. limit as well as within the 8 per cent. limit.

The question, therefore, presented is whether the limitation of 5 per cent. and 8 per cent. applies to

the vote authorizing the issue of bonds or to their actual issuance. This precise question came before this court in *Stockdale* v. *School District*, 47 Mich. 226. The school district, at an annual meeting, voted to, raise $730.31 by issuing bonds therefor. It was subsequently discovered by those opposed to the appropriation that the legal limit of borrowing by the district was $3,000, and suit was filed to restrain the issue of the bonds. In passing upon the question this court said:

> "There seems, however, to have been a statutory limit to the amount of bonds which the district might issue; and this was overlooked at the first meeting. The limit for districts having more than 100 and less than 200 children within the school ages—as this district had—is $3,000. (Public Acts 1877, p. 169.) The district was already bonded to the amount of $2,700, and if the vote had been limited to $300 it would have been valid. Having exceeded that sum, it is claimed to be void. · In *McPherson* v. *Foster Bros.*, 43 Iowa, 48, involving substantially the same question, the vote was held valid to the extent that would have been admissible had the limited sum been proposed and voted; and we agree in this view. See, also, *Grand Gulf Bank* v. *Archer*, 8 Smedes & M. (Miss.) 151. The injunction should therefore have been restricted to the excess above $300."

This appears to have been one of the early cases on the subject and has been followed and cited since by many authorities. A more elaborate statement of the rule appears in 28 Cyc. p. 1584:

> "Where municipal bonds have been already issued to the amount authorized by law, all bonds issued thereafter are void; but where the limit has not been previously reached, bonds which in the aggregate exceed the limit are void only to the extent of the excessive issue. Where an issue of bonds is only partially excessive if the bonds are delivered at different dates those first delivered up to the amount of the debt the municipality can lawfully create should

be paid and the others should be treated as nullities; but if the bonds were delivered at the same time so that none has priority over the others each bond is valid to the extent of its proportionate share of the debt lawfully contracted."

Instances of the application of this rule are: *Daviess County* v. *Dickinson*, 117 U. S. 657 (6 Sup. Ct. 897); *Everett* v. *School District*, 109 Fed. 697; *City of Columbus* v. *Woonsocket Institution of Savings*, 52 C. C. A. 118, 114 Fed. 162; *Truman* v. *Inhabitants of Town of Harmony*, 198 Fed. 557; *Turner* v. *Commissioners of Woodson County*, 27 Kan. 314; *Crogster* v. *Bayfield County*, 99 Wis. 1 (74 N. W. 635, 77 N. W. 167); *McKinney* v. *School District*, 144 Ky. 85 (137 S. W. 839); *Citizens Bank* v. *City of Terrell*, 78 Tex. 450 (14 S. W. 1003).

Plaintiffs have cited several cases in support of their contention but we think an examination of the facts involved therein will show them to be easily distinguished from the present one. Some of the exceptions are where the limitation is applied to the vote of the electors instead of to the issuance of the bonds, or where the legislative power is contemplating or threatening to issue bonds in excess of the percentage limitation. These and other distinctions have caused another rule to be applied.

In the present case, if the electors of the city of Monroe have voted sums in excess of the power to borrow this would not, under the well established rule, prevent them from borrowing up to their percentage limit. If the city commission were taking steps to or threatening to issue the entire amount authorized, or an amount which would be in excess of the 5 per cent. in any one year or a sum in excess of the 8 per cent. plaintiffs would have some reason to complain, but such is not the case. The commission disclaim any intention of violating either the charter or

the statute in this respect. They have determined, by resolution, that they will borrow $200,000 of the sum, which was authorized by the people. We think the commission was well within its power to do this and we will not assume that even though the electors have authorized a sum in excess of what can be lawfully issued the commission will borrow more than the statute and charter permit. As defendants have disclaimed any intention of going beyond what the law permits in the matter we think the filing of plaintiffs' bill was premature and should be dismissed. This was the view of the chancellor.

The decree will be affirmed. As the matters involved pertain to a public matter no costs will be allowed either party.

STEERE, C. J., and WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred. MOORE, J., did not sit.