# APRIL TERM, 1922.

CITY COMMISSION OF THE CITY OF JACKSON *v.* VEDDER.

MUNICIPAL CORPORATIONS — BONDS — JACKSON CHARTER — AMEND-
MENT—ELECTIONS—AUTHORITY TO ISSUE BONDS.

That the electors of the city of Jackson, having a home-
rule charter, voted to amend the charter in respect to
issuing bonds for a specific purpose, and at the same
election voted authority to the city commission to issue
the specific bonds thereunder, would not render the bonds
invalid, since it is the issuance of the bonds, and not
the vote of the electorate authorizing same, which creates
the liability against the municipality, and it is immaterial
that, at the time the commission took the preliminary
steps to submit the question to the people, authority to
issue the bonds was lacking.

Certiorari to Jackson; Williams (Benjamin), J.
Submitted April 20, 1922.　(Calendar No. 30,268.)
Decided April 26, 1922.

Mandamus by the city commission of the city of
Jackson to compel Clifton H. Vedder, city clerk, to
comply with the order of plaintiff relative to the issu-
ance of certain bonds. From an order granting the
writ, defendant brings certiorari. Affirmed.

*Barkworth & Leslie,* for appellant.

*Leland S. Bisbee,* City Attorney (*W. S. Cobb,* of
counsel), for appellee.

FELLOWS, C. J.　The city of Jackson operates under
(292)

a "home rule" charter. It has the commission form of city government. Due to the late war, high prices and other conditions, it ran behind in its financial affairs and some $375,000 was transferred from funds derived from the sale of bonds to its general fund for current expenses; $75,000 in addition to its revenue was also needed for such expenses. The limit of taxation in the charter prevented the raising of this sum by taxation. By appropriate action the city commission on December 5, 1921, submitted to the electors an amendment to the bonding section of its charter. The election was called for January 5, 1922. At the same meeting of the commission by resolution there was submitted to the electors at the same election the question of issuing the bonds of the city in the sum of $450,000. At the election the two questions were submitted on separate ballots and both carried by more than a two to one vote. The charter of the city as amended reads as follows, the italicized words being the amendment:

"The city commission, subject to the limitations and in the manner in this charter provided, and upon the approving vote of three-fifths of the qualified electors of the city voting thereon at any general or special election, may also borrow money and issue general obligation bonds of the city therefor for any public municipal purpose; Provided, however, that the city shall never issue bonds of any kind for the running expenses of the city or for the maintenance, operation or ordinary repairs of public buildings, public utilities or other property of the city. *Provided, further, however, that the city, during the year 1922, may issue its negotiable general obligation bonds in an amount not to exceed four hundred fifty thousand dollars ($450,000) to restore the moneys to the several funds created by the issuance and sale of bonds and which have been diverted, and to meet the unpaid obligations of the city incurred for running expenses and other unpaid obligations of the city to January 1, 1922, any provision of this charter to the contrary*

*notwithstanding*. The city commission may also issue special assessment bonds and special assessment general obligation bonds as hereinafter provided. The city commission, by an affirmative vote of four of its members, and without the approving vote of the electors, may authorize in any year an issue of bonds for the purpose of paying matured or maturing bonds of the city. The proceeds of any bond issue shall be paid into the city treasury and credited to the fund for which the bonds are issued, and shall not be used for any other purpose."

The issuance of the bonds is resisted on the ground, principally, that the two questions could not be submitted at the same election; it being the claim of defendant that until the charter was amended there was no authority in the commission to take any steps preliminary to the issuance of the bonds for the purpose indicated and that such preliminary steps were a nullity and the vote authorizing the issuance of the $450,000 of bonds conferred no authority on the commission to issue them. In other words, it is the claim of the defendant that the charter should have been first amended before the bonding proceedings were instituted. The trial judge in a well-considered opinion with which we are in accord sustained the validity of the bonds and the case comes here on certiorari.

It will be noted that at the election held on January 5, 1922, two questions were submitted: (1) Should the commission be authorized to issue bonds for the purpose indicated? (2) Should this specific block of bonds be issued for such purpose? Both questions carried by the requisite vote. By this action of the electorate the commission was given authority to issue bonds for the specified purpose and in the specified amount. The charter was amended by the electorate, and by the electorate the specific amount of bonds was authorized. Both were questions for the electors

to determine and the fact that they were determined at the same time does not weaken the authority. While the case of *Kirby* v. *City of Monroe*, 214 Mich. 615, is not directly in point, by analogy it is applicable. We there held (quoting the syllabus) :

"Since the limitation of bonded indebtedness fixed in the charter of the city of Monroe applies to the issuance of the bonds and not to the vote authorizing same, injunction will not issue to restrain the city commission from issuing bonds within the legal limits, although the electors by vote authorized an issue in excess thereof."

We there recognized the rule that the issuance of the bonds, not the vote of the electorate, created the liability, and that if the municipality at the time of the *issuance* of the bonds had authority to issue them they were valid to the extent of the authority. So here, when the plaintiff sought on behalf of the municipality to *issue* these bonds it had by the charter as amended authority to issue the bonds for the specified purpose, and by the vote of the electors authority to issue bonds in the sum of $450,000 for such purpose.

*Thompson Houston Electric Co.* v. *City of Newton*, 42 Fed. 723, presented a similar question to the one before us. The authority of the municipality was assailed because the two questions of erecting an electric light plant and the issuance of bonds were combined. The court sustained the validity of the proceedings.

In *Frost* v. *Central City*, 134 Ky. 434 (120 S. W. 367), the city had guaranteed certain bonds in the sum of $30,000, and the issue voted with this sum exceeded the bonding limit. Before the bonds voted were issued the $30,000 of bonds were paid. It was held that the city was then authorized to issue the bonds, recognizing the view that the

authority at the time of the issuance of the bonds rather than at the time of the vote controlled.

*Shearer* v. *Bay County Supervisors*, 128 Mich. 552, relied upon by defendant, involved the validity of a statute attempting to validate certain proceedings concededly invalid. The court held that the proceedings fell within that class which could not be validated by a curative statute. It is not out of accord with the holding in *Kirby* v. *City of Monroe, supra.* The same may be said of *Marshall* v. *Silliman*, 61 Ill. 218.

Some consideration is given in the briefs to the charter provisions before the amendment was adopted and it is suggested that they are inconsistent. We need not decide this question. The bonds in question are authorized by the amendment which is in no degree ambiguous.

The judgment will be affirmed. As the question is a public one, no costs will be allowed.

WIEST, McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.