ÆTNA LIFE INS. CO. et al. v. LYON COUNTY, IOWA.

(Circuit Court, N. D. Iowa, W. D. November 1, 1897.)

1. COUNTIES—CONSTITUTIONAL LIMIT OF INDEBTEDNESS—REFUNDING BONDS—DEMURRER.

In a suit against a county, the bill alleged that defendant was empowered to incur indebtedness up to, but not exceeding, a specified limit, and was authorized to issue bonds to refund existing valid debts. For the purpose of taking up various debts of that character, it appointed a financial agent, prepared bonds showing on their face that they were intended for refunding purposes, and, as inducements to the purchasers, explained the nature of the indebtedness to be paid off, and the county's financial condition and resources. From time to time the county sold the bonds to various parties, and the proceeds thereof were, in whole or in part, in fact used to pay off the pre-existing valid indebtedness of the county. If the amounts of all the bonds sold were to be added to the pre-existing debts, the total would show an excess over the constitutional limit. Upon demurrer, in a suit in equity, brought by the same persons who advanced the money direct to the county, and based on the entire transaction, *held*, that in so far as the proceeds were in fact used to pay off the prior valid indebtedness, they would create no excess over the limit, and that the suit might be maintained.

2. FORM OF ACTION—RES ADJUDICATA.

An action was brought at law, but was dismissed on the ground that relief should be sought in equity, and this judgment was affirmed on appeal. A suit was then begun in equity. *Held*, that defendant could not then object that the action should be at law.

3. STATUTE OF LIMITATIONS—COUNTY BONDS.

In so far as a given contract between a county and parties who advance money to it to pay off existing debts, and who receive county bonds as evidence of their claim, is valid, the statute of limitations does not begin to run as to the principal until the date fixed in the bonds for payment.

This was a suit in equity by the Ætna Life Insurance Company and others against Lyon county, Iowa, to recover money paid to the county for certain of its refunding bonds. The cause was heard on demurrer to the bill.

Cummings, Hewitt & Wright and Henderson, Hurd, Lenehan & Kiesel, for complainants.

N. T. Guernsey, A. Van Wagenen, and H. G. McMillan, for defendant.

SHIRAS, District Judge. The general facts upon which this proceeding in equity is based are set forth at length in the case of Ætna Life Insurance Co. v. Lyon County, heard before this court, and reported in 44 Fed. 329. In that case, which was an action at law on coupons belonging to a part of the series of bonds issued by Lyon county, which are involved in the present suit, the defense was interposed that the entire series of bonds was void, because in excess of the 5 per cent. limitation; but it was held therein that, under the evidence, it appeared that part of the series of bonds were valid and enforceable, and part were invalid; but in order to ascertain the amount for which the county should be held liable, and to determine whether all the bondholders should share ratably in the amount, or whether the bonds first sold, and up to the constitutional limit, should be paid in full, required the bringing of a suit in equity. In pursuance of this ruling,

the bill in equity in the present case has been filed, in which is recited the action taken by the county authorities for the purpose of refunding the existing debt of the county, the procurement of the money from complainants, the issuance and delivery of the bonds, it being further averred that the money realized from the sale of the bonds issued by the county and sold to complainant was used in paying off indebtedness of Lyon county, which was then valid and enforceable to the amount of $62,107.23, and a further indebtedness, evidenced by valid and existing judgment, to the amount of $30,213.26, the items and details being set forth at length in the bill; and the general questions presented by the demurrer are whether a recovery can be had against the county for the amounts of money by it received from the parties advancing the same, and used in the payment of valid existing indebtedness, and, if so, whether the action should not be at law, in the nature of an action for money had and received.

In support of the demurrer upon the first branch of the proposition, reliance is mainly placed upon the ruling of the supreme court in the cases of Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820, and Hedges. v. Dixon Co., 150 U. S. 182, 14 Sup. Ct. 71. In the former case it appeared that the city of Litchfield, Illinois, had issued bonds which were in excess of the constitutional limitation of 5 per cent., and in an action at law on the bonds they had been declared void for that reason. Thereupon a suit in equity was brought, wherein it was sought to hold the city liable, on the ground that the money realized from the sale of the bonds had been used in the erection of a waterworks plant for the benefit of the city. The supreme court held that the provisions of the constitution of Illinois in terms prohibited the city from becoming indebted, in any manner or for any purpose, in an amount exceeding 5 per cent. on the value of its taxable property, and that to permit a recovery against the city for an amount in excess of the limit, upon the theory of an implied promise to repay the money used in erecting the waterworks, would be as much a violation of the constitutional provision as to allow a recovery upon the express promise of payment contained in the bonds, because in each case alike the indebtedness of the city would thereby be caused to exceed the constitutional limit. In Hedges v. Dixon Co., the facts were that, under the vote of electors of the county, a donation of bonds in an amount exceeding the limit of indebtedness fixed by the constitution of Nebraska was made by the county to a railway company. The holders of the bonds filed a bill in equity, praying that an accounting might be taken to ascertain the limit of valid indebtedness which the county might incur, and that the excess of the bonds over the sum should be decreed invalid, and each bond should be scaled down its proper proportion, so that the bonds should be held to represent, in the aggregate, the amount of indebtedness legally creatable by the county. The supreme court held that the entire issue of bonds was invalid and void at law, and that, as the county did not receive the proceeds of the sale of the bonds, there was no ground for equitable relief. The difference in the facts between these cases and the one at bar renders the ruling therein inapplicable to the question now under consideration. In the case now before the court the bonds

were issued for the purpose of refunding the outstanding indebtedness of the county. The statutes of the state authorize the issuance of bonds for this purpose. The money realized from the sale of the bonds was used for the benefit of the county, and no reason exists why the county should not be held liable, except in so far as protection against liability can be based upon the constitutional limitation of 5 per cent. In order to determine the rights of the parties, it is necessary to ascertain the amount of the valid and enforceable indebtedness existing against the county at the several times when the bonds were sold to the complainants, for this is not a case wherein an entire issue of bonds, in an amount in excess of the 5 per cent. limitation, was sold at one time to one purchaser; and therefore it may well be that the sale of a part of the bonds did not increase the indebtedness beyond the constitutional limit, while subsequent sales may have exceeded the limit. Furthermore, the facts, when properly put in evidence, will doubtless present the question whether refunding bonds issued under the provisions of the statutes of the state, the proceeds of which are shown to have been properly used, in payment of outstanding valid and enforceable indebtedness, can be defeated on the ground that, if the amount of the bonds be added to the pre-existing debt, the constitutional limit would be exceeded, or whether it is permissible to prove that the bonds were issued for refunding purposes, were sold under the provisions of the state statute, and the proceeds were applied in payment of existing debts, thereby in fact not increasing the county indebtedness.

It is clear, under the ruling of the supreme court in Doon Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, that a recovery cannot be had upon a series of bonds which of themselves exceed the 5 per cent. limitation, by simply showing that the series were sold for cash, and that, if the county officials had properly used the proceeds in payment of existing indebtedness, the total debt of the county would not have been increased; for, as is said in that case, "it would be inconsistent alike with the words and with the object of the constitutional provision, framed to protect municipal corporations from being loaded with debt beyond a certain limit, to make their liability to be charged with debts contracted beyond that limit depend solely upon the discretion or the honesty of their officers." This case, however, does not go to the extent of holding that if A. should advance or loan to the county a certain sum, say, $100,000, for the purpose of enabling the county to refund its existing valid indebtedness, and the money should be applied to that purpose, A. could not recover because the sum he loaned in itself, or if added to the pre-existing indebtedness, exceeded the constitutional limitation. If, in such a case, A. should advance the named sum for refunding purposes to the county officials, and they should misappropriate the money, then A. could not recover against the county, because to recognize the indebtedness would of necessity increase the total amount to a sum beyond the limit. If, however, A. should, for the purpose named, pay to the county officials the agreed amount, and they should apply it in payment of the pre-existing debts of the county, the actual indebtedness would not be increased, and no reason exists why A. should not be entitled to re-

cover back the sum so advanced and used in extinguishing pre-existing indebtedness. In the supposed case, if A. is asked to advance or loan the county a given sum to refund the county indebtedness, he is bound to know that the question of whether he will have a valid claim against the county depends upon the proper application of the money advanced; and, if he chooses to intrust that matter to the good faith of the county officials, the validity of his claim, in whole or in part, will depend upon their action. If he advances, for refunding purposes, the sum of $100,000, and that sum is properly applied in paying up valid county indebtedness, the loan made by him has not increased the total indebtedness, and I can see no good reason why A. could not recover the money so advanced. For illustration: Suppose Lyon county to be indebted in the sum of $100,000, evidenced by valid judgments rendered against it; and desiring to fund this indebtedness, and thus extend the time of payment, the county officials should induce A. to loan to the county the sum of $100,000, upon the promise that the sum so advanced should be used in paying the judgments, and that, upon payment thereof, they would issue to A. bonds in the sum of $100,000, payable in 10 years. In pursuance of this arrangement, A. advances the money, the judgments are paid off, and then bonds to the amount of $100,000 are delivered to A., as evidence of debt to him. To a suit upon the bonds, could it be successfully pleaded as a defense that by adding the amount loaned by A., and now represented by the bonds, to the amount of the pre-existing valid debts which were paid by the use of the money advanced, the aggregate would exceed the constitutional limit. The receipt of the money and the use thereof by the county for the agreed purpose of paying the existing valid indebtedness would certainly create a right of action in favor of A., if the county did not repay the sum at the agreed time; and the issuance and delivery to A. of county bonds for the amount of the loan, and as written evidence of the existing debt, would certainly not invalidate A.'s claim, based upon the contract with the county. Complete protection can be afforded to the municipal corporation in cases of this character by holding that, where a party advances money to refund outstanding valid indebtedness of the county, he is bound to take notice of the constitutional limitation, and is therefore charged with the knowledge that, to create a valid claim against the county, the money he advances must be used in payment of valid indebtedness. In view of the constitutional limitation, and in view of the character of these municipal corporations, where it is sought to refund outstanding debts, the obligation rests upon the party advancing the money, in whatever form that may be done, to see to it that the money is properly applied to the payment of the existing debts. Ordinarily, when money is loaned to an individual, the obligation to repay is created by the advancement and receipt of the money, without regard to the use or misuse thereof by the recipient, because the individual has full legal power and right to borrow any amount, without regard to the purpose to which it is to be applied. Municipal corporations in Iowa are limited, both as to the amount of indebtedness and the purposes for which they can borrow money. When such a corporation seeks to borrow money for the purpose of

refunding existing valid debts, the parties from whom the money is sought are bound to know the limitations placed upon the power of the municipality by the constitution of the state in which it exists, are bound to know that the municipality cannot rightfully exceed the limitation, and are therefore bound to know that the mere act of advancing money to the county officials for refunding purposes will not necessarily create a valid claim against the county, but that, to create a valid claim, it must appear that the money advanced was in fact used for proper refunding purposes; but if the party advancing the money shows that the municipal corporation has the power and right, under the statutes of the state, to refund existing valid or enforceable indebtedness, by issuing bonds, and procuring the money thereon, and applying the same in payment of the indebtedness, and further shows the existence of valid indebtedness, the issuance of bonds under the statute, the procurement and proper application of the money, upon what principle of law or equity should the contract between the county and the one advancing the money be held invalid and void?

In the case of Doon Tp. v. Cummins, supra, which is the case upon which reliance is mainly placed to sustain the demurrer, it is stated that, if an exchange of bonds is made, the constitutional limitation would not be infringed, which clearly recognizes the idea that valid debts may be refunded by the substitution of new bonds therefor, so long as the effect thereof is not to increase the indebtedness beyond the constitutional limit. In the Doon Case the action was at law, based upon the bonds as negotiable instruments issued by the township. In cases wherein the right of recovery is thus rested upon negotiable paper, and wherein the holder may seek to estop the municipality by the recitals found on the face of the note or bond, or relies upon the peculiar privileges accorded by the commercial law to paper of this character, it is entirely proper to hold that, under that aspect, the paper itself creates an independent indebtedness, the validity of which, as against the constitutional limitation, depends upon the question whether the amount thereof, being added to the pre-existing debts, brings the aggregate beyond the limit.

But if the suit is not based upon the rights created by the purchase of negotiable paper, but upon the facts of a transaction to which the plaintiffs and defendant were parties, then it would seem that the transaction must be viewed as a whole, and that the rights of the parties must be determined by the effect of the entire transaction. Thus, in this case it appears that Lyon county was indebted to various parties; that the county determined to refund this outstanding indebtedness; that, for that purpose, B. L. Richards was appointed the financial agent of the county; that the issuance of bonds, under the provisions of the statutes then in force, and up to the limit of $120,000, was authorized; that the bonds on their face showed that they were intended to be used for refunding purpose; that, to induce the parties to purchase the same, the nature of the indebtedness to be paid off was explained to the purchasers; that, from time to time, bonds were sold to the various parties; that the money realized therefrom was used in paying off the pre-existing indebtedness of the county. Thus,

it appears that the case is not one wherein the plaintiffs can assert no contractual relation with the county, other than that based upon the ownership of the bonds, as would be the case if the plaintiffs had simply purchased the bonds in open market as negotiable securities from prior owners and holders thereof. On the contrary, the facts averred in the petition show that the plaintiffs and the defendant county are the original parties to contracts upon which the right of action is now based, which, in substance, are to the effect that the county, desiring to raise money with which to refund the existing indebtedness of the county, applied to the several plaintiffs to furnish the money for that purpose, and, as inducements thereto, submitted to the plaintiffs statements of the financial condition and resources of the county. Upon the statements and representations submitted by the county, the plaintiffs severally agreed to take a specific number of the refunding bonds of the county, and paid the face amount thereof to the county officials, by whom it was used in paying off the existing debt of the county. Under the facts of this case, it must be held that the plaintiffs knew that they could not create valid claims against the county by simply purchasing the refunding bonds of the county, if the amount thereof, added to the pre-existing debt, would exceed the constitutional limit. To create a liability, it must be made to appear, not only that the money was furnished, but that it was also used in paying off valid pre-existing debts. If, however, it is shown that the county, for the purpose of refunding the indebtedness of the county, did induce the plaintiffs to furnish the money needed, and to take the bonds as evidence thereof, and did use the money so procured in paying off the pre-existing indebtedness, upon what ground can it be said that the county is not bound to carry out the several contracts it made with the plaintiffs, whereby it induced them to furnish the money and take the bonds as security for the repayment of the sum furnished. As already pointed out, a valid claim against the county is not created until the money is actually used for the payment of the debts proposed to be refunded; but if the money is furnished for that purpose, and is used for that purpose, why is not the county liable for the sums thus advanced to it? The defense is that the transaction, in effect, creates a debt in excess of the constitutional limitation; but the defense is not made out unless the debt is in fact increased to such an extent as to infringe the constitutional limit. This limitation is intended for the protection of municipalities, and courts should in all cases see to it that its provisions are not evaded; but, on the other hand, courts should also see to it that the municipalities of the state do not use the provision as a means to escape the payment of just liabilities, and which in their inception did not, in fact, violate the constitutional limitation. Construing the bill in this case as being intended to base the rights of the complainants upon the facts of the transactions had between the county and the several complainants, it is clear that it cannot be held on demurrer that the claims of the plaintiffs are invalid because of the constitutional limitation.

In support of the demurrer, it is further urged that a court of equity has no jurisdiction, because there is an adequate remedy at law. As

already stated, the Ætna Insurance Company brought an action at law in this court to recover on the bonds held by it, and it was held that for the proper ascertainment of the rights of the parties, it was necessary to bring an action in equity. From this ruling, and the judgment based thereon, dismissing the law action, the plaintiff took a writ of error to the supreme court, in which court the judgment was affirmed. 15 Sup. Ct. 1037. In pursuance of the ruling thus made, the present bill in equity was filed, and it is now objected thereto that the action ought to be at law; but it is apparent that it is not now open to the defendant to urge the objection. When relief was sought at law, the court held that it was necessary to invoke the aid of equity; and this ruling, which stands in full force, compelled the complainants to proceed in equity, and it would be a travesty on justice to permit the defendant, which escaped a judgment in the law action, on the ground that the facts of the transaction were such as to require the aid of a court of equity, to now defeat the jurisdiction in equity, on the ground that an action at law is the appropriate remedy.

The last position taken in support of the demurrer is that the action is barred by the statute of limitations, and this is on the theory that the claims of the plaintiffs is for money had and received, and that the right of action accrued when the money was furnished, which was more than five years before this suit was brought. There can be no question that if the suit is to be viewed as one wherein the complainants are seeking to recover damages because they were induced to part with their money on the promise of receiving therefor valid bonds of the county, which were not in fact furnished them, then, under the rulings made in Morton v. City of Nevada, 3 C. C. A. 109, 52 Fed. 350, and Merrill v. Town of Monticello, 18 C. C. A. 636, 72 Fed. 462, the right of action for damages or for money had and received would be deemed to have accrued when the money was paid over and the void bonds were delivered, or, at furthest, when the county ceased paying interest on the bonds; but, as already stated, this proceeding is not for the recovery of damages, nor is it a case wherein the county had no authority to issue refunding bonds under any circumstances. In the cases just cited, the defendant town had no authority whatever to issue the bonds upon which the money was obtained, and it was held that the statute began to run against the right to recover the money paid from the date of the payment thereof. In the case at bar the suit is based upon the facts of the transactions had between the complainants and the defendant county, it appearing that the county obtained certain sums of money from the complainants for the purpose of refunding the debt of the county. The county had full authority to refund its indebtedness. It had the power to borrow money for that purpose. It had the power to issue bonds for refunding purposes. The averments of the bill show that it procured money from the several complainants for refunding purposes, and that the money thus procured was applied in whole or in part to the refunding of valid existing indebtedness of the county. The real contracts between complainants and the county were to the effect that, to enable the county to refund its existing debt, the complainants would furnish certain sums of money, and the county agreed to apply the

same in payment of the county debts, and to repay the money so received in 20 years, with annual interest, and, as evidence thereof, was to deliver to the complainants coupon bonds of the county duly executed. It is averred in the bill that the several complainants advanced the sums agreed on; the county bonds were delivered to complainants; and the money so received was used in paying the pre-existing debt of the county. It is now claimed that the county is relieved from the performance of its several contracts with the complainants, because thereby the indebtedness of the county was caused to exceed the 5 per cent. limitation found in the constitution of the state. If, upon a full hearing upon the facts, it appears that any one or more of the several transactions had between the county and the complainants resulted in creating a debt which was a violation of the constitutional limitation, then that contract cannot be enforced either by a suit on the bonds or by suit for damages or for money had and received, because the constitutional limitation prohibits the creation of a debt beyond the limit, in any and every form. If, however, upon a hearing upon the facts, it appears that any one or more of the several transactions between the county and the complainants resulted in the creation of a valid claim against the county, then that claim would be enforceable according to its terms, which were that the money was to be repaid in 20 years, with interest payable annually. The points of inquiry are: What, in effect, were the contracts that were entered into between complainants and the county, in pursuance of which the complainants advanced the money for which they received the bonds of the county? Are these contracts void by reason of the constitutional limitation? If they are void, no recovery in any form can be had thereon; but, if they are not void, then, being valid and in force, the county is bound by the terms thereof, and the principal of the debts does not become due for 20 years, although the interest for years past is overdue; and it may be that the statute of limitations may be applicable to some of the overdue interest, but that cannot be determined until the facts of the case are fully before the court. The demurrer, for the reasons stated, must be overruled, with leave to the defendant to answer by the December rule day.