ÆTNA LIFE INS. CO. et al. v. LYON COUNTY, IOWA (BRADLEY et al., Interveners).

(Circuit Court, N. D. Iowa, W. D. July 10, 1899.)

1. LIMITATION OF ACTIONS—SUIT TO DETERMINE VALIDITY OF MUNICIPAL BONDS.

A suit in equity by holders of bonds issued by a county, and claimed by the county to be invalid, as creating an indebtedness beyond the constitutional limit, to ascertain by judicial determination what part, if any, of the contract evidenced by the bonds is enforceable, is not subject to a plea of limitation, where the bonds, by their terms, have not matured.

2. SUBROGATION—HOLDERS OF VOID MUNICIPAL BONDS.

Holders of bonds of a county are not entitled to subrogation to the rights of creditors, whose claims were paid from their proceeds, so as to render such bonds enforceable beyond the county's constitutional limit of indebtedness.

**8. JUDGMENTS—EFFECT AS ADJUDICATION.**

A judgment of a state court in a personal action is not binding, as an adjudication on parties resident in other states, and there served with process, and who make no appearance.

**4. MUNICIPAL ·BONDS—ISSUE BEYOND CONSTITUTIONAL LIMIT—TO WHAT EXTENT ENFORCEABLE.**

Where bonds issued and sold by a county for full value, together with its existing valid indebtedness, exceeded the limit of indebtedness fixed by the constitution, but a part of such prior indebtedness was paid from their proceeds, they are enforceable to the extent of the difference between the remaining prior indebtedness and the constitutional limit.

**5. SAME—PARTIAL RECOVERY—DISTRIBUTION OF PROCEEDS.**

A county obtained a decree against certain holders of its bonds, adjudging such bonds void on the ground that the issue of which they formed a part was in excess of the legal limit of the county's indebtedness. In a subsequent suit in equity brought by all the holders of the same issue of bonds, a majority of whom were not parties to the former decree, it was adjudged that the issue was valid in a certain amount, which was within the limit of indebtedness. *Held*, that the prior decree could not avail the county to scale down such amount, which was less than the amount of the bonds held by those who were not bound thereby; hence the county had no ground for objecting to the apportionment of the amount held recoverable between all the bonds of the entire issue.

This was a suit in equity brought to determine the validity of certain county bonds. On final hearing.

### Findings of Fact.

(1) That the Ætna Life Insurance Company, the United States Bank, the Hartford Steam Boiler Company, the Orient Fire Insurance Company, and the Connecticut General Life Insurance Company were each when this suit was begun, and are now, corporations created under the laws of the state of Connecticut, and the Savings & Trust Company of Cleveland was when this was begun, and is now, a corporation created under the laws of the state of Ohio, the named corporations being the complainants herein.

(2) That the county of Lyon, the defendant herein, was when this suit was begun, and now is, a municipal corporation, created under the laws of the state of Iowa, and being organized as a county in the year 1872.

(3) That the interveners herein, William L. Bradley, Reeder Langworthy, John Olinger, and M. R. Amsden, were when this suit was begun, and have ever since been, citizens of the state of Iowa, and the intervener the Dubuque National Bank was when this suit was begun, and has ever since been, a corporation created under the banking laws of the United States, having its place of business in the city of Dubuque, state of Iowa.

(4) That Lyon county was organized about January 1, 1872. The state and county tax lists, from and including 1872, to and including 1885, and excluding the deductions and exceptions on account of timber culture, show the taxable property in the county as follows:

| | | | | |
|---|---|---|---|---|
| For the year 1872 | | | $ | 499,099 96 |
| "    "    " 1873 | | | | 1,009,444 56 |
| "    "    " 1874 | | | | 997,822 62 |
| "    "    " 1875 | | | | 1,061,306 63 |
| "    "    " 1876 | | | | 1,081,356 09 |
| "    "    " 1877 | | | | 885,262 80 |
| "    "    " 1878 | | | | 889,757 85 |
| "    "    " 1879 | | | | 915,133 28 |
| "    "    " 1880 | | | | 1,066,707 00 |
| "    "    " 1881 | | | | 978,250 00 |
| "    "    " 1882 | | | | 989,550 00 |
| "    "    " 1883 | | | | 1,384,289 00 |
| "    "    " 1884 | | | | 1,437,527 00 |
| "    "    " 1885 | | | | 1,558,043 00 |

The exemptions on account of timber culture, as provided by the laws of the state of Iowa, from and including the year 1879 to and including the year 1885, as shown by the state and county tax lists, were as follows:

For the year 1879 ........................................ $  75,218 80
"     "    " 1880 ........................................    171,551 00
"     "    " 1881 ........................................    171,515 00
"     "    " 1882 ........................................    175,547 00
"     "    " 1883 ........................................    177,182 00
"     "    " 1884 ........................................    143,208 00
"     "    " 1885 ........................................    160,135 00

Adding to the first table the timber-culture exemptions, for the purpose of ascertaining the whole value of the taxable property as shown by the state and county tax lists, the result is as follows:

For the year 1879 ........................................ $ 990,352 08
"     "    " 1880 ........................................  1,238,258 00 .
"     "    " 1881 ........................................  1,149,764 00
"     "    " 1882 ........................................  1,165,097 00
"     "    " 1883 ........................................  1,361,471 00
"     "    " 1884 ........................................  1,580,735 00
"     "    " 1885 ........................................  1,718,178 00

(5) That between the 18th day of July, 1872, and the 29th day of July, 1873, there were rendered against the county of Lyon judgments to the aggregate sum of $55,000, which were paid by the issuance of judgment bonds under the provisions of chapter 174 of the Acts of the 14th General Assembly of the state of Iowa, the judgment bonds thus issued by the county being numbered from 1 to 83, inclusive, and from 88 to 124, inclusive.

(6) In addition to the judgments named in the last finding, there were rendered against the county, up to the 15th day of May, 1878, judgments aggregating the sum of $14,572.88.

(7) On the 1st day of July, 1879, there were issued by the county, under the provisions of chapter 58 of the Acts of the 17th General Assembly of Iowa, $100,000 of funding bonds, known as the "Shade Bonds," which were sold for cash, and the proceeds were used as follows: $53,500 to pay in full the judgment bonds issued in 1872 and 1873 to take up the judgments named in finding No. 5; and the balance was used in paying up $47,300 of the funding bonds issued between October 19, 1874, and February 8, 1878.

(8) Between July 1, 1879, and May 1, 1885, there were issued by the county funding bonds to the total amount of $40,600.

(9) On the 1st day of May, 1885, there was outstanding indebtedness against the county as follows:

The Shade bonds, dated July 1, 1879 .......................... $100,000
Bonds issued between June 4, 1878, and June 5, 1879 ...........    8,000
Funding bonds ................................................   40,600
Warrants .....................................................   17,700
                                                               ─────────
                                                               $166,300

(10) That the board of supervisors of the defendant county, in 1884, began proceedings for the refunding the debt of the county in order to lessen the rate of interest the outstanding bonds were then drawing from 8 per cent. to 6 per cent., and, by resolution of the board, B. L. Richards was appointed financial agent of the county, for the purpose of carrying through the refunding operations of the county.

(11) That, to complete the refunding of the county debt, the board of supervisors of Lyon county authorized the issuance, under date of May 1, 1885, of $120,000 of the bonds of the county, which bonds, after the same were duly signed by the proper county officials, were delivered to B. L. Richards, as financial agent of the county.

(12) That B. L. Richards, as refunding agent of the county, applied to the several complainants and to others to become purchasers of the bonds, stating to them the purpose of the county to be to use the money procured in paying off the outstanding bonds of the county, thus refunding the existing debt at a

lower rate of interest, and, as an inducement to entering into the negotiations, Richards submitted to the proposed purchasers certified copies of the action of the county board of supervisors, with a statement of the existing indebtedness of the county, of its taxable property, and other like matters.

(13) That, as a result of these negotiations, Richards obtained from the complainants and other parties the full face value of the bonds, and in consideration thereof delivered to complainants and others the bonds for that amount, dated May 1, 1885, the sales and delivery being completed in the following order:

| June | 1, | 1885, | Nos. | 01 to | 027, | to G. B. Provost. |
|------|-----|-------|------|-------|------|--------------------|
| June | 4, | " | " | 048 to | 052, | to C. H. Eighmey. |
| " | 6, | " | " | 053 to | 055, | to Dubuque National Bank. |
| Aug. | 28, | " | " | 056 to | 090, | to Ætna Life Insurance Company. |
| Sept. | 1, | " | " | 091 to | 095, | to U. S. National Bank. |
| " | 1, | " | " | 096 to | 0105, | to Orient Fire Insurance Company. |
| " | 2, | " | " | 0106 to | 0110, | to Connecticut General Life Insurance Company. |
| " | 8, | " | " | 028 to | 047, | to Saving & Trust Company, of Cleveland, Ohio. |
| " | 20, | " | " | 0111 to | 0120, | to Hartford Steam-Boiler Inspection & Insurance Company. |

(14) That the amount of money thus received by Richards was used by him in paying the so-called "Shade Bonds" issued by the county, and in paying $16,900 of the outstanding refunding bonds of the county, with the interest due thereon, and in payment of the necessary expenses incurred in disposing of the issue of $120,000 of bonds.

(15) That on the 15th day of May, 1887, there was filed in the district court of Lyon county, Iowa, in the name of Anderson and others, residents and taxpayers in Lyon county, a petition asking that it be decreed that the issue of $120,000 of refunding bonds were void under the constitutional limitation, and restraining the county treasurer from making payment thereof. To this petition the county officers, the complainants, and some of the interveners were named as defendants, but service of notice was not had upon any of the complainants within the state of Iowa, and the Orient Fire Insurance Company alone of the complainants entered an appearance. A decree in compliance with the prayer of the petition was finally entered in the case, and was affirmed by the supreme court of the state, but the only parties to the present suit affected by the decree are the Orient Fire Insurance Company and George B. Provost.

(16) That the negotiations between Richards, as refunding agent of the county, and the complainants and interveners, resulting in the sale of the bonds, were carried on at the same time, and were pending for some time before the same were completed, as set forth in finding No. 13.

(17) That under the contracts entered into between the county through its refunding agent, and the parties taking the bonds of the county of date of May 1, 1885, the money so borrowed by the county was to be repaid in 20 years, with interest at 6 per cent., payable semiannually.

(18) That the county of Lyon, after the receipt of the money procured from the complainants and the delivery of its bonds as hereinbefore stated, refused to pay the interest on the bonds, claiming that the bonds had been issued in violation of the provision of the state constitution, limiting the indebtedness of the county to 5 per cent. on its taxable property, and thereupon an action at law was brought in this court upon the matured interest coupons, which resulted in the holding that the remedy must be sought in equity, as is shown by the opinion of this court set forth in 44 Fed. 329.

(19) That it appears from the evidence in this case that the county of Lyon can be held liable for the sum of $29,636.75 out of the money procured from the complainants and others in exchange for the $120,000 of bonds of May 1, 1885, without causing the indebtedness of the county at that time to exceed the constitutional limitation.

(20) That the present suit was brought April 30, 1896, and all payments of interest coming due more than 10 years before that date are barred by statute of limitations.

Cummins, Hewitt & Wright and Henderson, Hurd, Lenehan & Kiesel. for complainants.

E. C. Roach, E. Y. Greenleaf, and Simon Fisher, for respondent.

J. M. Parsons, for interveners.

SHIRAS, District Judge. The general rules which should be applied in the determination of the questions presented by the record in this suit are fairly stated in the opinion of the court upon the hearing of the demurrer to the bill, and which is reported in 82 Fed. 929. The record shows that all the owners of the series of bonds issued by the defendant county under date of May 1, 1885, and amounting to the sum of $120,000, are parties to this suit, and therefore the final decree herein will fully settle the liability of the county, if any, upon this entire issue of bonds. The evidence proves that, aside from the defense based upon the limitation contained in the constitution of the state of Iowa, forbidding the creation of indebtedness by municipalities of the state to an amount in excess of 5 per cent. upon the value of the taxable property of the municipality, the bonds in question were issued under due and proper authority of law, and the county received full value therefor, and thus the question is narrowed down to the proposition whether the constitutional limitation prevents the granting of any relief to the complainants, under the facts established by the evidence in this case. The stipulation herein filed shows that the total taxable value of the property in the county, at the date of the issuance of the bonds now held by complainants, was the sum of $1,580,735, including therein the sum of $143,208, entered upon the tax books of the county as exemptions allowed under the timber-culture acts of the state of Iowa, but which sum, for the reasons stated in Keene Five-Cent Sav. Bank v. Lyon Co., 90 Fed. 523, I hold is not to be deducted from the valuation of the property as shown upon the county tax lists; and thus it appears that in 1885 the limitation fixed by the constitution of the state upon the extent of the indebtedness lawfully creatable by the county was the sum of $79,036.75. On May 1, 1885, the indebtedness of the county consisted of the so-called "Shade Bonds," amounting to $100,000; $8,000 of the bonds issued between June 3, 1878, and June 5, 1879; the funding bonds of $40,600; and warrants to the amount of $17,700. The Shade bonds, being issued in excess of the constitutional limitation, were not enforceable, and, under the ruling of the court of appeals in Lyon Co. v. Ashuelot Nat. Bank, 30 C. C. A. 582, 87 Fed. 137, they cannot be included in the computation of the existing indebtedness of the county, and, omitting these bonds, there remains a total liability then outstanding of $66,300; thus showing that the county indebtedness had not reached the constitutional limit by the sum of $12,736.75. Furthermore, the evidence shows that with the money procured from the complainants there were paid off $16,900 of the outstanding valid refunding bonds previously issued by the county, and it thus appears that the aggregate of these two amounts, to wit, $29,636.75, can be charged against the county without causing the indebtedness to exceed the sum of $79,036.75, the amount of the constitu-

tional limitation. In other words, if the liability of the county in its contracts, evidenced by the bonds issued under date of May 1, 1885, is enforced up to the named sum of $29,636.75, the indebtedness of the county will not be increased beyond the restrictive limit of the constitution; and upon what principle of law or equity can the claim be based that the county ought not to be held liable for this amount, at least? As already stated, the county has received and used full consideration for the whole amount of the bonds issued by it. The only defense against liability for the full sum of the bonds is the constitutional limitation, but force and effect is given thereto by limiting the right of recovery against the county to a sum which will not cause the indebtedness to exceed the limitation.

On behalf of the defendant, it is urged that the statute of limitations bars any recovery in this case, even admitting that a liability existed against the county at the date of the furnishing the money by the complainants. If this was an action for money had and received, or for damages or the like, the cause of action would be held to have accrued in 1885, when the money of complainants was paid to the county, and the plea of the statute might well be availed of to defeat a recovery. The present proceedings are not to recover for money had and received, nor for damages for fraud or deceit, but the bill is filed for the purpose of having it decided what part or portion of the contracts entered into by the county with complainants can be enforced, in view of the constitutional limitation. The purpose of the bill is not to obtain a decree canceling or rescinding the contracts in fact entered into, whereby the complainants paid to the county certain sums of money, in consideration of its promise to repay the same in 20 years, with interest payable at stated intervals, but to ascertain, by judicial determination, what portion, if any, of the contract can be enforced. If it be held that a given amount is valid and enforceable, that part must be enforced, in accordance with the terms of the contract between the parties, which fixed the time of payment of the principal sum due at 20 years from May 1, 1885.

If the suit is maintainable for this purpose, then the statute of limitations is only available against such portions of the interest as may have come due more than 10 years preceding the filing the bill herein, but is not available to defeat the proceeding as a whole. Thus, the pivotal question is whether the complainants can enforce their claims against the county for an amount which, if allowed, will not increase the liability of the county beyond the constitutional limit. This is not a case wherein the rights and equities of complainants are based solely upon a purchase by them, in open market, of the negotiable securities of the county; but the evidence shows that B. L. Richards, the refunding agent of the county, directly negotiated with complainants, and submitted to them the resolution of the board of supervisors, indicating the purpose of the county to refund the outstanding indebtedness in order to reduce the interest, and submitted evidence showing that it was the purpose of the county to use the money it desired to obtain from complainants in refunding the

existing indebtedness of the county, which purpose, if effectual, would not increase the debt of the county. By these inducements, the complainants were induced to loan to the county a large amount of money, upon the promise that it would be repaid in 20 years, with interest, and the money thus advanced was in fact used in payment and discharge of the outstanding indebtedness of the county.

As evidence of the obligation which the county had assumed to repay the sums received by it from complainants, the written promise, in the form of negotiable bonds and interest coupons, was executed and delivered to complainants; but, when performance of the promise was demanded of the county, it replied that, owing to the restrictive limit upon municipal indebtedness contained in the constitution of the state of Iowa, it could not lawfully incur the whole amount of the indebtedness represented by the bonds held by the complainants, and thereupon this suit was brought to ascertain what part or proportion of the indebtedness actually incurred can be enforced without violating the constitutional restriction, and, it having been ascertained that at the time of the negotiations had with complainants the county could lawfully borrow from complainants a given amount, no reason exists why the promise of the county should not be enforced against it up to this amount.

On part of complainants, it is contended that as the proceeds of the Shade bonds were partly used to pay judgments and other enforceable indebtedness existing against the county, and as these bonds were wholly paid off by the proceeds of the issue of May 1, 1885, complainants are entitled to have this amount ascertained as part of the sum for which the county is liable, even though the aggregate would exceed the 5 per cent. limit; but in view of the ruling of the supreme court in Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625, it cannot be held that complainants are entitled to be subrogated to the rights of the owners of the judgments or other debts paid off from the proceeds of the Shade bonds, and the relief decreeable must be confined to the sum already named, to wit, $29,636.75.

Much reliance is placed by the defendant upon a decree rendered in a case entitled Anderson v. Insurance Co. (Iowa) 55 N. W. 348, by the district court of O'Brien county, Iowa, and affirmed on appeal by the state supreme court, which was a proceeding in equity brought by certain residents and taxpayers of O'Brien county to restrain the county treasurer from making any payments on the bonds negotiated by B. L. Richards, and to have the bonds adjudged to be illegal and nonenforceable, and in which case a decree to that effect was entered. It is shown upon the record that in that case service of the original notice therein was not had upon any one of the complainants within the state of Iowa, they being all residents of other states, and no appearance therein was entered for any of the complainants except the Orient Fire Insurance Company, and therefore the decree therein is of no force against any of the complainants, except the Orient Company; it being well settled that, in personal actions, the service of notice by publication, or by reading the process to the party, at a place outside of the territorial jurisdiction of the court, confers no jurisdiction over the party thus served. Pennoyer v. Neff, 95 U. S.

714; Hart v. Sansom, 110 U. S. 151, 3 Sup. Ct. 586. The adjudication in that case had no effect upon the rights of any of the complainants herein, except the Orient Company, and an examination of the opinion of the Iowa supreme court shows that the court carefully refrained from expressing an opinion on the pivotal point presented by the record in this case; it being therein said, after citing the decision of the supreme court of the United States in Doon Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, that:

"The opinion in that case contains some reasoning as to the application of the proceeds of the sale of the bonds, and the consequences to result from a failure of the officers to do their duty in that respect, which we do not find it necessary to approve or disapprove, because in this case the situation is such that there is no pretense of knowing, or being able from the record to know, that any part of the proceeds of the bonds in question—that is, those affected by the judgment in this case—were applied, or intended to be applied, to any legal indebtedness of the county; and the burden of such a showing, even if available,—which we do not decide,—would be with the holder of such bonds. Under the facts as they appear in this case, the bonds are to be treated as void."

There is therefore nothing in the adjudication entered in that case, or in the opinion of the supreme court, which prevents this court, upon the facts now presented before it, from ascertaining what portion of the indebtedness created by the county in borrowing the money of complainants, for the purpose of paying off the outstanding obligations of the county, can be declared valid and enforceable, without violating the constitutional limitation. On the contrary, the decision and opinion in that case sustain, in principle, the right of this court to hear and determine the issues presented by this record. If a court of equity has the right, at the suit of residents of the county, to entertain a bill brought to ascertain whether certain bonds issued by the county are valid or invalid, and, if the latter, to restrain the collection thereof, then it must possess the right to investigate all the facts inhering in the situation, and to determine what part are valid and what part are invalid. Thus if, in the case of Anderson v. Insurance Co., the complainants herein had appeared, and, by proper pleadings and evidence in support thereof, had proven just the state of facts that are now made to appear, would it not have been the duty of that court to have heard and decided the question thus presented to it, and if, as a result, that court had found that a certain part of the indebtedness actually incurred by the county to the complainants for money borrowed could be enforced without overstepping the constitutional limitation, would it not have been the duty of the court to so adjudge? As the complainants, save the Orient Company, did not appear in that case, and were not brought within the jurisdiction of the state court, the adjudication therein does not affect them, and they are at liberty in this proceeding to obtain the relief which would have been open to them had they become parties in fact to the suit in the state court.

Leaving out of consideration the parties who are bound by the adjudication in the state court, the question is, what sum can the county be held liable for to the complainants and other holders of its bonds, without overstepping the constitutional limit? As already stated, the conclusion reached is that, under the facts proven in this

case, the county can be held bound in the sum of $29,636.75 as of the date of May 1, 1885, without infringing upon the constitutional inhibition. It is a matter of no moment to the county how this sum is distributed or divided among the complainants and interveners. If, by reason of the adjudication in the state court, it be true that any one or more of the parties are precluded from sharing in the sum found due, that ought not to affect the amount for which the county is held liable, so long as the claims of those not parties to the suit in the state court exceed in amount the sum adjudged against the county. The record shows that the Orient Company has been joined as a party complainant, and the bill proceeds upon the theory that equity requires that all the parties who advanced their money upon the faith of the promises of the county should share ratably in the salvage from the wreck, and it is not now perceived that the county defendant has the right to object to such equitable division, in case it be agreed to by the creditors. If the only parties seeking relief in this case against the county were the Orient Insurance Company and George B. Provost, it would clearly be the duty of this court to give full force to the decree of the state court, and to hold them barred from enforcing their claims against the county, because of the effect of the decree in that case; and it is equally the duty of the court to protect the county from any increased liability, based upon the claims of these parties, over and above the amount which would be adjudged against it if these claims were eliminated from consideration. But, as already said, the amount for which the county can be held liable depends upon the question of the amount of liability it could incur at the date of the issuance of the bonds, and, that amount being found to be the sum of $29,636.75, it is immaterial to the county how this amount is divided among the bondholders.

The conclusion reached is that the county, through the refunding operations carried on by its agent, B. L. Richards, incurred an enforceable indebtedness to the amount of $29,636.75, which it bound itself to repay in 20 years from May 1, 1885, with interest thereon at 6 per cent. per annum, payable semiannually, and, as evidence thereof, it executed the bonds and coupons issued under date of May 1, 1885; that the complainants are entitled to a decree adjudging the liability of the county as above stated; that, for the protection of the defendant county, the bondholders will be required to deposit with the clerk of this court, within 60 days from the entry of the decree, the bonds held by them, and the clerk will then enter upon the face of the bond and coupons not yet due a recital showing the amount for which the same are adjudged to be valid; that the county be adjudged to pay the semiannual interest that has matured, and remains unpaid, for the period of 10 years next preceding the bringing of this suit, upon the amount of $29,636.75, for which the county is held liable; and that complainants have judgment for costs.