EVERETT v. INDEPENDENT SCHOOL DIST. OF ROCK RAPIDS et al.

(Circuit Court, N. D. Iowa, W. D. June 21, 1901.)

1. MUNICIPAL BONDS—JURISDICTION OF EQUITY TO ENFORCE—EFFECT OF SUBDIVISION OF MUNICIPALITY.

Where bonds in excess of the constitutional limit of indebtedness have been issued by an Iowa school district which is subsequently subdivided into a number of districts, between whom, under the statute, the existing indebtedness must be equitably distributed, the remedy of a bondholder to enforce payment of his bonds is in equity, both on the ground that there is no privity of contract between him and the new districts, and also because the amount of the indebtedness which is valid can only be determined and apportioned as between the different districts and bond-

holders by a court of equity in a suit to which such bondholders are made parties.

2. JURISDICTION OF FEDERAL COURT—CITIZENSHIP OF PARTIES—ARRANGEMENT ACCORDING TO INTEREST.

A federal court has jurisdiction of a suit brought by a holder of a portion of an issue of bonds made by a school district which exceeded its constitutional limit of indebtedness against the district and the other bondholders, to establish the validity of his bonds and enforce their payment, notwithstanding the fact that some of the other bondholders are citizens of the state of which the district is a corporation, since upon the issue as to the amount of complainant's enforceable indebtedness, to determine which the other bondholders are joined, their interests and that of complainant are adversary.

3. MUNICIPAL BONDS—ISSUANCE BEYOND CONSTITUTIONAL LIMIT OF INDEBTEDNESS—JURISDICTION OF EQUITY.

Where a municipal corporation has issued and sold for full value a series of bonds, which it refuses to pay on the ground that such issue increased its indebtedness beyond the constitutional limit, a court of equity at suit of the bondholders may inquire into the facts, to ascertain what part, if any, of the debt thus created can be enforced without violating the constitutional limitation, and may award judgment for such amount.

4. SAME—EXTENT TO WHICH ENFORCEABLE.

Where at the time of the issuance of a series of bonds by a school district it was already indebted beyond the constitutional limit, such bonds may be enforced to the extent that their proceeds were used in paying off valid prior indebtedness of the district, but not beyond such amount.

5. LIMITATION—SUIT TO DETERMINE VALIDITY OF MUNICIPAL BONDS.

A suit by the holders of an issue of municipal bonds which increased the indebtedness of the municipality beyond the constitutional limit, to obtain a determination of the amount for which such bonds are valid, and to enforce them to that extent, is not an action to recover for money received, against which limitation runs from the time the bonds were sold, but is one for the enforcement of the contract made by the bonds, and limitation runs only from their maturity.

In Equity.

For former opinion, see 102 Fed. 529.

E. S. Huston, for complainant.

J. M. Parsons, E. C. Roach, S. D. Rinicker, E. Y. Greenleaf, and C. J. Miller, for defendants.

SHIRAS, District Judge. This is a suit in equity based upon the following general facts: In 1871 a certain portion of the territory embraced within the limits of Lyon county, Iowa, was organized as a school district, in accordance with the statutes of Iowa, under the name of the "District Township of Rock," and so continued until the fall of 1872, when the territory therein included was divided into the independent school district of Rock Rapids, the independent school district of Riverside, and the district township of Little Rock, each of which new districts became liable for one-third of the existing indebtedness of the original district. In the spring of 1885 the independent school district of Rock Rapids was subdivided into the independent school district of Rock Rapids and the rural independent school districts of Garland, Foss, Highland, and Pleasant View; the name of the latter district being subse-

quently changed to Cleveland.   On the 18th of November, 1879, the independent school district of Rock Rapids, as then constituted, was largely indebted, and on the day named the board of directors of the district adopted a resolution in the terms following:

"Whereas, there has been bonds issued by the independent district of Rock Rapids, Lyon county, Iowa, for the purpose of building school houses and other purposes, and for judgments obtained against said district, to the amount of $25,981.16; and whereas, said bonds are drawing interest at the rate of 10 per cent. per annum, and are fast becoming due; and whereas, the levy is not sufficient to meet the demands upon the district: Therefore, be it resolved by this board that they issue bonds of the district provided by section 1821, chapter 9 of title 12 of the Code of Iowa, 1873, as amended in chapter 121, Laws of the 16th Gen. Assembly; said bonds to run not more than ten years, payable at the pleasure of the district at any time after five years. Said bonds to bear interest at the rate of 8 per cent. per annum, payable semiannually at the office of the treasurer of the district, and the president and secretary are authorized to issue said bonds as by law required.   On motion, the following resolution was adopted: Whereas, there has been judgments obtained against this district prior to March 25, 1878, to the amount of $25,981.16; and whereas, there has been but a small portion of said judgment indebtedness paid; and whereas, the judgment levy is not adapted to meet said judgments: Therefore, be it resolved by the board of directors of Rock Rapids, Lyon county, Iowa, that the board issue judgment bonds of the district as provided by chapter 132 of the 17th Gen. Assembly,—a law for the bonding of judgment indebtedness of school districts; said bonds to run not more than ten years, and payable at the pleasure of the district at any time after five years from date of issue of said bonds; said bonds to bear interest at the rate of 8 per cent. per annum, payable semiannually at the office of the treasurer of the district, and the president and secretary are authorized to issue said bonds as by law required."

In pursuance of such action on the part of the board of directors, negotiable bonds to the amount of $25,000 were prepared and duly executed by the officers of the district, wherein it was recited that the district would pay the amount named in each bond to ———— or order on the 15th day of December, 1889, or at the pleasure of the district after five years, with interest at 8 per cent. per annum, payable semiannually.   Of these bonds the complainant purchased $13,500 in amount, paying par therefor, and other parties, who are made defendants in this action, purchased the other bonds; and the money received from such sales by the district was used in the payment of the indebtedness of the district, represented mainly by judgments and bonds.   When these bonds were so issued and sold the act of the general assembly of Iowa approved March 25, 1878, being chapter 132 of the Acts of the 17th General Assembly, was in force, whereby it is enacted:

"That any school district against which judgments have been rendered prior to the passage of this act and which judgments remain unsatisfied, may, for the purpose of paying off such judgments and funding such judgment indebtedness, issue upon the resolution of the board of directors of the district, the negotiable bonds of such district.   *   *   *"

The interest on the bonds in question was paid by the district up to the 15th of December, 1885, since which time no payments have been made; it being claimed by the district that the bonds were void because they exceeded in amount the 5 per cent. limitation placed by the constitution of Iowa on the indebtedness le-

gally creatable by municipal corporations of the state. The present suit was thereupon brought by the complainant for the purpose of enforcing payment of so much of the indebtedness as it should be determined could be enforced in view of the constitutional limitation. The fact appearing that the complainant was not the only party who had purchased bonds issued under the resolution of the board of directors adopted November 18, 1879, it was thus shown that in order to properly ascertain the rights of the several bondholders, as well as to protect the rights of the district, it was necessary to make parties to the suit all the holders of the bonds; for, if it should be made to appear that when the issuance of the bonds in question was authorized the district could lawfully issue an amount less than the total aggregate in fact issued and sold, then the question would be presented as to the rights of the several bondholders to this amount,—whether in equity the bondholders should be held to share proportionately in this amount, or whether the bonds first sold should be paid in full. Furthermore, the rights of particular parties might be dependent upon the fact that the money paid by them was used in discharging judgments existing against the district, and it is apparent that upon these questions the bondholders were adversary parties to each other, and no adjudication could well be had thereon, except in a suit wherein all the bondholders were made parties. The suit having been brought, it further appeared that after the issuance of the bonds provided for by the resolution of the board of November 18, 1879, other bonds had been issued by the district in January and March, 1882, in the aggregate sum of $8,000, which were purchased by the Keene Five-Cent Savings Bank, one of the defendants to the original bill, and thereupon the bank filed a cross bill setting up the execution and purchase of these bonds, and praying that its rights thereunder should be ascertained and protected. The several school districts made defendants to the bill interposed demurrers thereto, which were overruled, and answers were filed, upon which issue was joined, and the case is now before the court for final hearing upon the pleadings and proofs.

On behalf of the school district it is again urged that the court is without jurisdiction, for two reasons: First, that complainant has an adequate and speedy remedy at law, and therefore the court of equity cannot take jurisdiction; and, second, that William L. Bradley, one of the owners of the bonds, and one of the defendants to the original bill, was when the suit was brought, and still is, a citizen of the state of Iowa.

In support of the first ground stated, counsel have cited many cases wherein it was held that jurisdiction in equity did not exist by reason of the fact that the remedy at law was adequate, and no one questions the proposition that if the remedy at law is adequate, speedy, and sufficient, resort to equity cannot be had, but in each case the question of jurisdiction in equity must be determined under the facts of the particular case. The rule is well settled in the federal practice that, in order to maintain an action at law on a contract, there must be privity of contract between the plaintiff

and defendant. If this privity is lacking, the proceeding must be in equity. Cragin v. Lovell, 109 U. S. 194, 3 Sup. Ct. 132, 27 L. Ed. 903; Second Nat. Bank v. Grand Lodge of Missouri, 98 U. S. 123, 25 L. Ed. 75; Keller v. Ashford, 133 U. S. 610, 10 Sup. Ct. 494, 33 L. Ed. 667. It will be borne in mind that the school district now known by the name of the "Independent School District of Rock Rapids," and which is a defendant in this suit, is not the corporation which in fact issued the bonds sued on, for it is shown in the evidence that in 1885 the territory then comprising the independent school district of Rock Rapids was divided into five districts, designated by the names of the "Independent School District of Rock Rapids" and the "Rural Independent School Districts of Garland, Foss, Highland, and Pleasant View"; the latter district being now known as Cleveland. Under the provisions of the Code of Iowa in cases wherein an existing district is divided into new districts, the liability for the existing indebtedness is to be equitably distributed; but this provision does not enable a court of law to award a judgment against each new district for its supposed proportion of the existing indebtedness, in favor of the bondholder, for the reason that there is no privity of contract between the new district and the bondholders. The remedy, if any, in favor of the bondholders, must be in equity, for certainly a court of law cannot give adequate relief under such circumstances. The nature, also, of the accounting that must be had in cases of this character is such as to give jurisdiction in equity, and the rights of the school districts cannot be properly protected except by a proceeding wherein all the bondholders are made parties; and it must therefore be held, as it was on the demurrer, that the objection to the jurisdiction on the ground of an adequate remedy at law is not well taken.

The second ground of objection to the jurisdiction of this court is the fact that one of the defendants, William L. Bradley, who is a bondholder, is a citizen of Iowa, of which state the school districts are corporations; and it is contended that in fact Bradley must be deemed to be a co-plaintiff with the complainant, thus showing that the requisite diversity of citizenship does not exist. Bradley is not made a defendant to the original bill for the purpose of enabling him to enforce by decree his claim as a bondholder against the school district, but solely for the purpose of enabling the complainant to properly establish the amount, if any, of his enforceable indebtedness against the defendant districts, and on this question the complainant and Bradley are adversary parties. Bradley has no interest in the bonds owned by complainant, nor in the equities existing in his favor; and therefore the only position the complainant could assign him when the bill was filed was that of a defendant, and therefore it cannot be rightfully claimed that his position in the case must be held to be that of a co-complainant. If he was properly named as a defendant to the original bill, then the jurisdiction of the court is not affected by the fact that he and others of the defendants are citizens of the same state.

We thus reach the question whether in cases of this character,

if it appears that a municipal corporation has issued a series of bonds, receiving full pay therefor, but which the corporation refuses to pay on the ground that by the issuance of the bonds the indebtedness of the municipality has been caused to exceed the constitutional limitation, a court can investigate the facts, and, if it appears that part of the indebtedness can be recognized and enforced without violating the constitutional limitation, whether the court can award judgment up to the amount of the limitation, or whether the court is bound to refuse all aid to the bondholders. It is not to be denied that there are decisions of the supreme court, and notably that rendered in Doon Dist. Tp. v. Cummins, 142 U. S. 366, 12 Sup. Ct. 220, 35 L. Ed. 1044, which seem to sustain the broad ground contended for by counsel for the defendant districts in this case; but it must be remembered that all decisions must be read in the light of the particular facts before the court in the case wherein the decision is given. In the Cummins Case the effort was made to sustain the validity of a series of bonds amounting to $25,000, when the value of the taxable property in the district only authorized the creation of debts to the amount of $6,-551.90, or, to state the proposition in the language of the supreme court:

"Its outstanding bonded debt was already not less than $20,000, which, upon the facts found, must be assumed to be valid. For the purpose of funding that debt it executed and sold bonds to the amount of $25,000, and it actually applied less than $6,000 of the proceeds of the sale to the payment of outstanding bonds. The result of holding the new bonds good would be to double the whole bonded debt of the district, and to bring it up to about thirty per cent. of the valuation."

The court was not called upon to consider the question whether a bondholder may not institute a suit for the purpose of ascertaining whether at the date of the issuance of a given number of bonds the limit of constitutional indebtedness had been reached, and also to what extent the money received from the sale of the bonds had been actually applied in payment of existing valid indebtedness, so as to determine what amount could be awarded the bondholder without infringing upon the constitutional limitation. In the case of Ætna Life Ins. Co. v. Lyon Co. (C. C.) 82 Fed. 929; Id., 95 Fed. 325,—I considered this question with care, and reached the conclusion that a suit in equity, for the purpose named, could be maintained, and as yet I see no good reason for departing from the conclusion therein reached. The cases cited by counsel, of the class whereof Hedges v. Dixon Co., 150 U. S. 182, 14 Sup. Ct. 71, 37 L. Ed. 1044, is a sample, are not in point, for the reason that the bonds held invalid therein were issued as a donation on part of the county, and, as is said by the supreme court:

"It cannot be properly said that the purchasers of these bonds from the railroad company paid any consideration therefor to the county, so as to raise any equity as against it, for the amount represented by the bonds, or any part thereof.",

The true purpose of the present suit is to ascertain what number or part of the bonds issued by the school district of Rock Rapids,

as it existed in 1879, can be enforced against the several districts now representing the original district, without infringing the constitutional limitation; and I am not able to perceive the force of the argument whereby it is sought to maintain the proposition that the constitutional provision prohibits judicial inquiry into the actual facts in order to determine whether the whole or any part of the indebtedness represented by the bonds in suit can be enforced without violating the constitutional limitation. If the contention of the defendant districts be sustained, it results in the holding that a municipal corporation, the indebtedness of which has not reached the limit, may issue bonds slightly in excess of the limit, sell the same for full value, use the money in paying off all its debts, and then repudiate the last issue of bonds, and by so doing wholly free itself from all liability at law or in equity. Such a rule would convert the constitutional provision which was intended as a protection against excessive taxation into a potent method of perpetrating frauds of the most unblushing character. According to the construction sought to be put upon the decision of the supreme court in Doon Dist. Tp. v. Cummins, it would follow that if a municipality, having the right under the constitution to create a debt to the amount of $10,000, should in fact become indebted in the sum of $9,000, and then, for the purpose of funding this debt at a reduced rate of interest, should issue bonds in the sum of $9,000, sell the same at par, and use the proceeds in paying off the preexisting indebtedness, it could defeat recovery on the bonds by pleading the constitutional provision, although in fact the transaction had not resulted in imposing upon the taxable property within the municipality a burden in excess of the 5 per cent. limitation. In the Doon Case it was not sought to have an investigation of the question of the amount of indebtedness which could be recognized and enforced without transgressing the limitation of the constitution, and I cannot believe that the supreme court will ever hold that in cases of this character it is not open to the person, who has in good faith paid to the municipality the full face value of the bonds issued, to seek a judicial inquiry into the facts of the situation, in order to have it determined what part, if any, of the debt thus created can be recognized and enforced without violating the constitutional provision; and I therefore adhere to the views expressed in Ætna Life Ins. Co. v. Lyon Co., supra, from which it follows that the pivotal point in this case is the question of the amount, if any, of the bonds issued that can be enforced without violating the true meaning of the constitutional limitation.

The evidence in the case shows that at the date of the issuance of the bonds, in December, 1879, the independent district of Rock Rapids was indebted in an amount in excess of the limit imposed by the constitution, and therefore the liability of the district for the debt evidenced by the bonds in question must be limited to the aggregate of the valid and enforceable indebtedness existing against the district, which was in fact extinguished by the money received from the sale of the bonds. A judgment against a municipality represents a valid and enforceable debt, regardless of the limitation

in question; and so, also, do funding bonds issued under proper legislative authority for the purpose of funding existing judgments. In the agreed statement of facts submitted as part of the evidence in this case, it is, admitted that of the money received from the sale of the bonds of the issue of December 15, 1879, the sum of $6,785.10 was in fact used in payment of judgment bonds Nos. 17, 18, 19, and 20, and in payment of certain named judgments against the district; and as thereby valid and enforceable indebtedness owing by the district was discharged, by being converted into the bonds, the actual indebtedness of the district was not in fact increased by the transaction, and to that extent the validity of the debt incurred by the district by the sale of the bonds can be enforced without increasing the burden of its indebtedness. City of Cedar Rapids v. Bechtel, 110 Iowa, 196, 81 N. W. 468. With respect to the bonds issued under date of January 1, 1882, and now owned by the Keene Five-Cent Savings Bank, and upon which recovery is sought by the cross bill filed by the bank, it appears that two thereof, for $500 each, were exchanged for two bonds of like amount issued by the district in 1872, and no reason is perceived why they do not represent enforceable and valid indebtedness. The remaining bonds of that issue, and also those issued under date of March 1, 1882, it is admitted, were exchanged for other indebtedness of the district; but I cannot find from the evidence that such indebtedness was valid and enforceable, and therefore these bonds cannot be held valid on the ground that equitably they were substituted for the exchanged indebtedness, it not appearing that the latter was in fact enforceable.

It is finally contended on behalf of the defendant districts that, owing to the lapse of time, recovery is barred under the statute of limitation; the ground taken being that the suit is not based upon the written contract of the school district, but is in the nature of an action for money had and received, and is therefore barred by the lapse of five years from the date the money was paid to the district. The contract in writing, evidenced by each bond issued and sold, was to the effect that the principal sum was to become due and payable on December 15, 1889, and this suit was brought before the lapse of 10 years from that date. The court has now found that, of the bonds issued in 1879, the same are enforceable up to the limit of $6,785.10. There still remains the question whether the bonds first sold up to that amount are to be held valid, or whether that sum is to be equitably distributed and applied on each bond of the issue. If the former course is pursued, it is clear that the bonds held good are not subject to the plea of the statute; for this suit, as already said, was brought within 10 years after the maturity of the bonds, and I do not see why the statutory plea should be held good if the final conclusion is that each bond is entitled to share in the distribution of the amount named. Furthermore, as was held in the already cited case of Ætna Life Ins. Co. v. Lyon Co. (C. C.) 95 Fed. 325, 330, this suit is not for money had and received or for damages, nor does it ignore or seek the cancellation of the contracts set forth in the bonds issued by the district, but,

on the contrary, it is brought to enforce these contracts, and in effect, therefore, the suit is based upon written contracts, which are not barred under the statute of Iowa until after the lapse of 10 years from the maturity of the written instruments which form the basis of the suit.

The conclusion reached, therefore, is that of the bonds issued in December, 1879, there is enforceable the sum of $6,785.10, with semiannual interest at 8 per cent., to be calculated for a period of 10 years prior to the commencement of this suit, making in all the sum of $15,087.53, and of the bonds issued under date of January 1, 1882, there is enforceable the sum of $1,000, with interest at 7 per cent., payable semiannually for 10 years prior to May 28, 1901, the date when suit thereon was brought by filing the cross bill on behalf of the Keene Five-Cent Savings Bank, making in all the sum of $1,899.50.

In the cross bill filed on behalf of the defendant bondholders it is averred that the bonds issued in 1879 were sold in a certain order, and it is claimed that the priority in time of sale gives the holders priority of right to be paid in full. Counsel have not discussed the question thus presented, and the court will not now undertake to consider it. If the parties in interest are not able to agree upon the method of distribution, the question must be presented to the court when the form of the decree to be entered is submitted to the court.